UNITED STATES of America,
Plaintiff-Appellee,

v.

Arnold Eugene WILLIAMS,
Defendant-Appellant.

No. 75–2286.

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1977.

William W. Burge, Asst. Fed. Public Defender, Houston, Tex. (Court-appointed), for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

By its summary order of December 6, 1976, reproduced in its entirety in the margin,[1] the Supreme Court has vacated our

---

1. "Dec. 6, 1976. On petition for writ of certiorari to the United States Court of Appeals for the Fifth Circuit. Motion for leave to proceed *in forma pauperis* and petition for writ of certiorari granted. Judgment vacated and case remanded to the Court of Appeals for further

unpublished opinion of October 30, 1975,[2] and remanded with directions for our further consideration in light of *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), *Williams v. United States*, 429 U.S. 990, 97 S.Ct. 516, 50 L.Ed.2d 603 (1977).[3]

Encapsulated, the relevant facts in the present case are as follows: On December 27, 1973, while on probation after conviction of a federal drug offense, defendant Williams was arrested and charged with three separate state robbery offenses. On February 5, 1974, before Williams was tried in a Texas state court on two of the charges, the United States District Court for the Southern District of Texas issued a warrant for Williams' arrest on charges that he violated the conditions of his probation. Williams was ultimately convicted on one of the robbery counts on March 28, 1974. At a time not specified in the record, Williams was released on bond pending the outcome of his appeal of his state court conviction. Apparently in response to Williams' release, the federal warrant was executed and Williams was arrested on March 12, 1975. On the following day a preliminary hearing on his probation violation charge was held. After a full hearing 12 days later, probation was revoked by a memorandum and order dated April 30, 1975. In short, the warrant was executed 13 months after it was issued, and Williams' probation was revoked 53 days thereafter.

In contrast, the procedural background of *Daggett* was as follows: After serving four years of a ten year sentence for a federal rape offense, petitioner Moody was paroled. While on parole, he shot and killed two persons, was convicted in federal court, and received ten-year concurrent sentences. Soon after Moody was imprisoned for the two homicides, the United States Board of Parole issued a parole violator warrant which it lodged with prison officials as a "detainer". Although Moody requested the Board to execute the warrant immediately, the Board insisted that it would do so only upon his release from his second sentence. Thus, he faced the prospect of waiting ten years before he would be entitled to a parole revocation hearing, simply because the Board refused to allow the one act that would entitle him to such a hearing—execution of the warrant.

The Supreme Court framed the issue in *Daggett* as follows: "[W]hether a federal parolee imprisoned for a crime committed while on parole is constitutionally entitled to a prompt parole revocation hearing when a parole violator warrant is issued and lodged with the institution of his confinement but not served on him." 429 U.S. at 79, 97 S.Ct. at 275, 50 L.Ed.2d at 236. The Court held that no right to a prompt hearing attaches until the parolee is taken into custody as a parole violator.

Upon consideration, we adhere to our original decision for the following reasons.

■ *Daggett* addressed the Parole Board's common practice of filing parole violation warrants as "detainers" and withholding execution until the parolee's subsequent sentence is about to expire. Until *Daggett*, the Courts of Appeals were divided on whether this practice denied parolees the right to the timely revocation hearing directed by *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).[4]

consideration in light of *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976)."

**2.** *See* Table, 523 F.2d 1054 (5th Cir. 1975).

**3.** On the same day the Supreme Court remanded another case for reconsideration in light of *Daggett*. *Jones v. Johnston*, 175 U.S.App.D.C. 151, 534 F.2d 353, *vacated and remanded sub nom. Reed v. Byrd*, 429 U.S. 995, 97 S.Ct. 520, 50 L.Ed.2d 606 (1976).

**4.** Cases holding that the Parole Board's detainer procedure violates due process include *Jones v. Johnston*, 534 F.2d 353, 175 U.S.App.D.C. 151, (1976), *vacated and remanded sub nom. Reed v. Byrd*, 429 U.S. 995, 97 S.Ct. 520, 50 L.Ed.2d 606 (1976); *United States ex rel. Hahn v. Revis*, 520 F.2d 632 (7th Cir. 1975), mandate recalled, No. 74–1057 (Aug. 27, 1975); *Cleveland v. Ciccone*, 517 F.2d 1082 (8th Cir. 1975). Cases finding no due process violation include *Reese v. United States Bd. of Parole*, 530 F.2d 231 (9th Cir. 1976); *Gaddy v. Michael*, 519 F.2d 669 (4th Cir. 1975); *Small v. Britton*, 500 F.2d 299 (10th Cir. 1974); *Cook v. United States Attorney General*, 488 F.2d 667 (5th Cir.), cert.

*Morrissey* held that the conditional freedom granted a parolee is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate procedural safeguards.[5] Although a parolee incarcerated for a subsequent offense lacks the conditional freedom on which *Morrissey* was based, the courts finding a due process violation in "detainer" cases held that the parolee's interest in a prompt adjudication of his parole violation charge qualified as a protected liberty interest. Execution of the parole violation warrant is irrelevant, these courts reasoned, because "the issuance of a . . . warrant triggers a process which . . . must be pursued with reasonable diligence and with reasonable dispatch." *Shelton v. United States Bd. of Parole*, 128 U.S.App.D.C. 311, 388 F.2d 567, 574 (1967). This Court took a contrary view in *Cook v. United States Attorney General*, 488 F.2d 667 (5th Cir.), cert. denied, 419 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75 (1974), where we held that "execution of the warrant is the operative factor in triggering the availability of the revocation hearing." *Id.* at 671. The Court in *Daggett* accepted our position, holding that no right to a revocation hearing accrues until the warrant has been executed and the parolee taken into custody, even where the warrant has remained outstanding for more than 10 years.

On its face, *Daggett* seems to have scant relevance to the instant case. The probation violation warrant against defendant Williams was executed, preliminary and formal hearings were promptly held, and a judicial determination to revoke probation

was made. Furthermore, while *Daggett* sanctioned the deliberate withholding of a hearing for ten years or more, the warrant against defendant Williams remained outstanding for only 13 months.

■ We note also that while *Daggett* is based on Fourteenth Amendment Due Process, defendant Williams' argument in the instant case was grounded in the speedy trial guarantee of the Sixth Amendment. Reliance on the right to a speedy trial here was misplaced. By its terms, this right is available to an accused only in "criminal prosecutions".[6] As the Supreme Court noted in *Gagnon v. Scarpelli, supra*, "[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution". 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973).

■ Nevertheless, speedy trial, "one of the most basic rights preserved by our constitution", *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S.Ct. 988, 995, 18 L.Ed.2d 1, 9 (1967), cannot be completely divorced from the panoply of rights embraced by due process.[7] Indeed, to determine the due process rights of the incarcerated parolee in *Daggett*, the Court evaluated the same factors it had used to determine the speedy trial rights of prisoners in *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).[8] There the Court held that the right to a speedy trial applied to a person charged with a state criminal offense while serving a prison sentence imposed by another jurisdiction. In both cases the Court examined such factors as loss of the opportunity to serve concurrent sentences, worsening of the conditions of imprisonment

---

denied, 419 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75 (1974).

5. Due process protects the conditional liberty interests of parolees and probationers alike. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

6. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .." U.S.Const., Amend. VI.

7. *See* Mr. Justice Stevens' dissent in *Moody v. Daggett*, 429 U.S. 78, 91–93, 97 S.Ct. 274, 281, 50 L.Ed.2d 236, 246 (1976).

8. The majority opinion in *Daggett* does not cite *Smith v. Hooey*. Still, the parallels between the two cases are unmistakable. An earlier "detainer" case, which reached a result contrary to *Daggett*, quoted extensively from *Hooey* and observed: "Although we recognize that *Smith v. Hooey* is not a 'due process' case, it is our view that a prisoner's interest in a speedy trial while incarcerated on another charge is in many ways similar to the interest in a prompt parole revocation hearing . . ." *Jones v. Johnston, supra*, 534 F.2d 353 at 359.

brought about by the pending charge, depressive effect upon the prisoner, and impairment of the accused's ability to defend himself. In *Hooey*, the Court found that these factors were sufficient to call for a speedy trial; in *Daggett*, where the prisoner faced revocation of parole and not conviction of a second crime, the Court concluded that all but one of these factors did not so grievously affect the prisoner's liberty interests as to warrant due process protection. The Court was careful to note that one factor, actual impairment of the accused's defense, had not been alleged by the petitioner in *Daggett*.[9]

Petitioner in the instant case has claimed that the 13 month delay in executing the probation violation warrant in fact impaired his ability to present his defense. We assume that the Supreme Court has remanded so that we may determine whether the presence of this factor demands a result contrary to that reached in *Daggett*.

Prejudice which actually impairs an accused's ability to defend himself is a serious matter. In the landmark speedy trial case, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court pointedly observed that "the inability of a defendant adequately to prepare his case skews the fairness of the entire system". *Id.* at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. We note that the accused at a probation revocation hearing may be prejudiced by the loss of evidence that might be of little value to the criminal defendant. The probation authority must, of course, determine that a violation of the conditions of probation has occurred. Such a determination, however, does not automatically trigger revocation of probation. Rather, the board must make a prediction "as to the ability of the individual to live in society without committing antisocial acts." As the Court explained in *Morrissey*:

This part of the decision, too, depends on facts, and therefore it is important for the board to know not only that some violation was committed but also to know accurately how many and how serious the violations were. Yet this second step, deciding what to do about the violation once it is identified, is not purely factual but also predictive and discretionary.

408 U.S. at 480, 92 S.Ct. at 2599–2600, 33 L.Ed.2d at 493. Thus, in revocation cases, even if the prisoner admits the violation, he may be prejudiced if delay has impaired his ability to present evidence of mitigating circumstances that might affect the decision to incarcerate him and the conditions of incarceration.

■ Because of its facts, *Daggett* leaves unanswered whether due process is violated when, although a detainer has lawfully been filed against the prisoner, the delay in execution actually impairs his ability to contest the fact of violation or to present mitigating evidence. We conclude that the facts of the instant case do not allow us to resolve this question. Defendant Williams has failed to demonstrate that he was prejudiced in either way.

Revocation of Williams' probation was based on two findings by the district judge: (1) participation in the robbery for which Williams was convicted in state court, and (2) leaving the Western District of Texas without permission of the probation officer. As to the first finding, we noted in our earlier opinion that "appellant's criminal conviction . . . provided an adequate evidentiary basis for the revocation of his probation. *United States v. Garza*, 5 Cir. 1973, 484 F.2d 88." Williams claims that his ability to contest this charge was impaired by the delay because an alibi witness died in the period during which the violation warrant remained unexecuted. We note, however, that the testimony of this

---

**9.** The Court relegated discussion of this point to a footnote, but made clear that actual impairment was not present: "Petitioner further claims that evidence of mitigation may be lost if the revocation hearing is not held promptly, but he makes no claim that there is additional evidence in this case which may be vitiated by

a delay. Had such claims been made, the Commission has the power, as did the Board before it, to conduct an immediate hearing at which petitioner can preserve his evidence. 18 U.S.C. § 4214(b)(2); 28 CFR § 2.53 (1975)." *Moody v. Daggett*, 429 U.S. 78, 88, n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236, 244 n.9 (1976).

deceased witness would have been merely cumulative; three other witnesses furnished the same information at the revocation hearing.[10] Furthermore, we are unpersuaded that Williams was entitled to offer *any* alibi evidence with respect to the robbery. "Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." *Morrissey, supra*, at 490, 92 S.Ct. at 2605, 33 L.Ed.2d at 499.

As to the second finding, Williams claims that a witness who would have confirmed his account that he left the jurisdiction under exigent circumstances was unavailable at the time of the hearing; thus, the delay denied him the opportunity to present mitigating evidence. We find this claim to be without merit because the robbery for which Williams was convicted also occurred outside of the jurisdiction to which he was confined.[11]

We can do no more than reiterate our caveat in *Cook, supra* : "In concluding that the deferral of the hearing did not deprive Appellee of any rights prescribed by *Morrissey*, we emphasize that Appellee has not shown that he was prejudiced by the delay". 488 F.2d at 672. The Supreme Court has suggested that due process might be violated where the right to a speedy trial is unavailable but delay has nevertheless caused actual prejudice to an accused's defense.[12] We respect the Court's admonition that accommodation of competing interests in such cases "will necessarily involve a delicate judgment based on the circum-

stances of each case. It would be unwise at this juncture to attempt to forecast our decision in such cases." *United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468, 481 (1971).

AFFIRMED.

---

**10.** The robbery of which Williams was convicted took place in Houston on December 26, 1973, at approximately 3:30 p. m., T.R. 36. Williams maintains that he was at his parent's house in San Antonio at the time, and that his stepfather would have so testified had he been alive at the time of the revocation hearing. Three other witnesses testified that Williams was in San Antonio at the time of the robbery, including the brother of the stepfather, T.R. 85, Williams' mother, T.R. 127, and Williams himself, T.R. 156. Thus, we fail to see how the stepfather's death impaired Williams' alibi defense.

**11.** We are satisfied that the district judge, in granting the government's motion to revoke

Williams' probation, was sensitive to the possibility that Williams was prejudiced by the delay. In denying a motion to dismiss, the judge stated, "Well, if there is any evidence to indicate that your client has suffered any prejudice by delay attributable to the prosecution or this court, I will take another look at [the motion to dismiss]." T.R. 3.

**12.** Cf. *United States v. Shaw*, 555 F.2d 1295 (5th Cir. 1977) [decided July 18, 1977]; *United States v. Barket*, 530 F.2d 189 (8th Cir. 1976); *Ross v. United States*, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965).