## UNITED STATES

v.

## Toney PADEN.

## Crim. No. 76–591.

United States District Court,
District of Columbia.

March 7, 1983.

---

Thomas E. Zeno, Asst. U.S. Atty., District of Columbia, for United States with whom Stanley S. Harris, U.S. Atty., and Oscar Altshuler, Asst. U.S. Atty., Washington, D.C., were on brief.

Gerald R. Robbins, Washington, D.C., for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court for reconsideration of the Court's order revoking probation and imposing sentence on defendant Toney Paden. Immediately after sentencing defendant on August 24, 1982, the Court, concerned about whether it had jurisdiction to revoke probation, asked counsel to submit memoranda of law on the question. Subsequently, the Court issued a written order directing the parties to brief several legal issues and held an oral hearing to further develop the record in this case. Upon consideration of the additional evidence presented, the legal authorities adduced, and the Court's own independent research, the Court has decided that it lacked jurisdiction to revoke defendant's probation, and accordingly it shall vacate the sentence imposed. Because the case raises several questions of first impression in this jurisdiction, elaboration of the Court's decision is clearly warranted.

### I. THE FACTS

The parties have stipulated to the following facts, which constitute the important sequence of events herein:

12/17/76 Defendant was sentenced on two counts of possession of narcotics to consecutive one-year terms. Execution of sentence was suspended and he was put on probation for three years with the condition of drug treatment and test-

ing, as directed by the Probation Office.

7/5/77 Judge Joseph Waddy ordered the issuance of a bench warrant for a violation of the probation condition of drug treatment and ordered Magistrate Henry Kennedy to handle the hearing on violation.

8/23/77 Magistrate Kennedy issued a Report and Recommendation not to revoke Mr. Paden's probation because he was in compliance with the drug treatment program with the Volunteers of America.

10/21/77 Judge Waddy ordered a hearing before Magistrate Kennedy for a probation violation because of a violation of the condition prohibiting continued drug use.

4/11/78 Magistrate Kennedy continued probation with a special condition that defendant attend in-patient drug treatment at the RAP treatment center.

5/5/78 Based on reports that defendant had failed to appear at the RAP center, another hearing on violation of probation was scheduled before Magistrate Kennedy on this date. Because Mr. Paden did not appear at the hearing, Magistrate Kennedy issued a bench warrant for his arrest.

In addition to these stipulated facts, the government proffered several additional ones:

6/13/78 Probation Officer Ardito made a home visit to defendant's residence, where he spoke with defendant's father, but not with defendant.

9/19/78 United States Marshalls unsuccessfully sought defendant at his residence for the first of seven times, all of which occurred during 9/78 and 10/78.

5/11/79 In order to confirm defendant's address, the Marshall's Service checked to see if defendant had an outstanding valid driver's license and found that he did not.

2/13/80 Probation Officer Ardito requested a "rap" sheet from the FBI to determine if defendant had been arrested in another jurisdiction, a check he repeated on 7/13/81.

7/23/81 Probation Officer Ardito checked with the District of Columbia Police Department to determine if defendant had been re-arrested in Washington.

The parties did not present evidence on the following additional facts, which took place in 1982, but they are accurately reflected in the Court's official docket:

2/10/82 Defendant was arrested in Prince George's County, Maryland, and subsequently charged with breaking and entering.

3/23/82 Magistrate Kennedy's bench warrant of 5/5/78 was finally returned executed, and a hearing was set before Magistrate Arthur Burnett for violation of probation.

3/31/82 Magistrate Burnett raised the issue of jurisdiction, and continued the hearing on violation for the first of several times.

6/30/82 The hearing on violation was finally held before Magistrate Burnett, at which time defendant admitted to the house-breaking in Maryland, and after which Magistrate Burnett submitted a Report and Recommendation favoring revocation.

## II. THE COURT LACKS JURISDICTION BECAUSE THE MAGISTRATE DID NOT HAVE AUTHORITY TO ISSUE THE CRITICAL BENCH WARRANT

█ In this case, the government has consistently argued that the issuance of the bench warrant by Magistrate Kennedy on May 5, 1978 served to toll the defendant's period of probation, thus extending this Court's jurisdiction to the date of sentencing. Accordingly, the first legal question to be addressed is whether a magistrate has authority to issue a bench warrant and thus to extend the jurisdiction of this Court. It should be noted that the first time a bench warrant was issued for defendant, on July 5, 1977, it was ordered by Judge Waddy, but the second warrant (the critical one here) was ordered solely by Magistrate

Kennedy, without any subsequent approval by this Court.

It is clear that this Court had the power to issue a warrant for a violation of probation that occurred during the defendant's period of probation. 18 U.S.C. § 3653. It is also clear, under 28 U.S.C. § 636, that this Court could have delegated to the Magistrate the task of issuing a bench warrant. Neither of these things, however, was done in this case. What was done was that the Court delegated to Magistrate Kennedy the authority to initiate and conduct hearings on violation of probation, pursuant to Local Rule 2–8(e). The local rule nowhere states that because a magistrate has been authorized to conduct a hearing on violation that the Magistrate therefore has authority to issue a bench warrant for defendant's failure to appear.

The government argues that the power to issue a warrant for failure to appear should be considered implicit in the Magistrate's authority to conduct hearings. It reasons that the Magistrate may be prevented from performing his delegated task if the defendant fails to appear, and thus the Magistrate needs to be able to compel attendance. Moreover, magistrates have express authority to issue bench warrants for the arrest or misdemeanants, *see* 18 U.S.C. § 3401, and for violations by any defendant of the conditions for pre-trial release, *see* 18 U.S.C. § 3146; I *Legal Manual for United States Magistrates* § 5.22 (1982).

On the other hand, the fact that issuance of a bench warrant by a magistrate is specifically authorized by statute in some contexts suggests that magistrates do *not* have "inherent" authority to issue bench warrants (where there is no statutory authorization). The only explicit authority that the government has cited to support the Magistrate's unapproved action here is Local Rule 2–8(e), and even that rule, by its terms, requires the Magistrate to submit a written recommendation to the District Judge before any action is taken with respect to a probationer. Thus, there is no

statutory authority for the bench warrant issued by Magistrate Kennedy on May 5, 1978.

This absence of authority would not normally be terribly problematic,[1] and could easily have been avoided in this case by the Magistrate's submission of a recommendation to the district judge that a bench warrant be issued. As the facts stand, however, the Magistrate's bench warrant is relied upon to confer jurisdiction on this Court. Thus, its defectiveness undermines the very power of this Court to act. Since the warrant was defective, this Court had no jurisdiction to revoke defendant's probation.

### III. THE COURT LACKS JURISDICTION BECAUSE THE BENCH WARRANT WAS NOT EXECUTED FOR FOUR YEARS AFTER IT WAS ISSUED

 Even if the bench warrant were valid, it is not clear that it could toll the defendant's period of probation all the way up to the date of sentencing. The bench warrant was executed almost four full years after it was issued, and then only because defendant was arrested in Prince George's County on another charge. This four-year delay, in and of itself, can be considered sufficient to divest the Court of jurisdiction.

The parties have produced no prior decisions from this jurisdiction holding that a bench warrant can toll a period of probation, and certainly none holding that it can toll the period for as much as four years. In *Shelton v. United States Board of Parole,* 388 F.2d 567, 574 (D.C.Cir.1967), the Court of Appeals for this jurisdiction stated, in the context of a *parole* violation, that "the issuance of a violator warrant triggers a process which, as a matter of fundamental fairness, must be pursued with reasonable diligence and with reasonable dispatch." The Court of Appeals was careful not to specify a particular time period that would

---

1. Indeed, it does not seem to have troubled any prior tribunal of this Court, since the parties

have been unable to locate any precedent at all on the question.

fail to satisfy the requirement of "reasonable dispatch," but cited to two older cases, *United States v. Gernie,* 228 F.Supp. 329 (S.D.N.Y.1964), and *United States ex rel. Howard v. Ragen,* 59 F.Supp. 374 (N.D.Ill. 1945), in which the delays between warrant issuance and execution were eleven and fourteen years, respectively. Later courts have deemed as unreasonable delays of four years, *Simon v. Moseley,* 452 F.2d 306 (10th Cir.1971), and even as little as fourteen months, *United States v. Louzon,* 392 F.Supp. 1220 (E.D.Mich.1975). Thus, this Court is well within its bounds to find that the four years between issuance and execution of the warrant here was unreasonably long—long enough to divest this Court of jurisdiction over the defendant.

The government argues that consideration must be given to the efforts it made to locate and serve the defendant during the four years. Rather, the Court believes, like Judge Bogdanski in *Parham v. Warden, Bridgeport Correctional Center,* 172 Conn. 126, 374 A.2d 137, 143 (Conn.1976), that consideration should be given to *three* factors:

1. the time lapse between the issuance of the warrant and its execution;

2. the efforts of the [government] to serve the warrant; and

3. the conduct of the [defendant] in frustrating service of the warrant.

Here, the Court considers the time lapse between the issuance of the warrant and its execution to be unreasonably long. It also finds, from defendant's testimony, that he did not attempt to frustrate service of the warrant. These factors are not outweighed by the efforts the government made to serve the warrant.

■ Probation Officer Ardito and the United States Marshall Service *did* make home visits to defendant's residence, but never when the defendant was home from work. As in the case of *United States v. Gernie,* 228 F.Supp. 329 (S.D.N.Y.1964), defendant lived at the same place, within this jurisdiction, for the entire period that the warrant was outstanding. The other efforts made by the government—checking to see if the defendant had a valid driver's license or if he had been arrested in another jurisdiction—were little more than routine records searches. Indeed, the defendant was only finally served because he was apprehended by law enforcement officials elsewhere. Accordingly, the Court holds that the government's efforts to execute the warrant do not outweigh the length of time it took to serve the warrant or the fact that defendant remained within the jurisdiction for the entire time the warrant was outstanding. As a result, the warrant, when finally executed, is not sufficient to support the exercise of jurisdiction over the defendant.[2]

## IV. THE COURT LACKS JURISDICTION BECAUSE THE DEFENDANT'S ALLEGED VIOLATION OCCURRED AFTER THE EXPIRATION OF THE MAXIMUM PERIOD FOR PROBATION

■ Perhaps even more important than the delay in execution of the bench warrant

---

**2.** The government further argues that, even in the absence of the bench warrant, the fact that the defendant failed to report to his probation supervisor caused the period of his probation to be tolled automatically. As support, the government cites the cases of *Ashworth v. United States,* 391 F.2d 245 (6th Cir.1968), and *United States v. Workman,* 617 F.2d 48 (4th Cir.1980). Despite repeated re-reading, the Court can find absolutely no support for this proposition in *Ashworth,* and only tangential support in *Workman.* The *Workman* decision enumerates several different instances in which courts have found a period of probation to be tolled—1) where the defendant was imprisoned for an unrelated offense, 2) where the defendant was in jail awaiting sentence for violation of probation, and 3) where the defendant was out of the jurisdiction and not reporting to his probation supervisor. The decision nowhere mentions the situation presented there, where the defendant was in the jurisdiction but not reporting. Indeed, the holding of *Workman* was that the defendant's period of probation should *not* be tolled while he was in the jurisdiction awaiting the outcome of an appeal. There being no support for the government's position, and certainly none from this jurisdiction, this Court is unwilling to adopt it here, especially in the face of all the other procedural defects presented. Jurisdiction will not be premised solely on the defendant's failure to report.

is the fact that the defendant was sentenced for conduct which occurred after the maximum period for his probation had expired. Under 18 U.S.C. § 3651, the statutory maximum period of probation is five years, a period that cannot be modified or extended by the Court. In this case, this period expired in December of 1981. Nonetheless, the defendant was sentenced for conduct which occurred in February of 1982.

The government argues that it is irrelevant that the maximum period of probation for defendant expired in December of 1981, because his period of probation was tolled by the issuance of the bench warrant. The bench warrant, it argues, does not "extend" the period of probation, it "tolls" the period, and thus does not contravene 18 U.S.C. § 3651. For support, the government cites the case of *United States v. Strada*, 503 F.2d 1081 (8th Cir.1974), in which the Court revoked the defendant's probation one *day* after the maximum five-year period had run. More supportive of the government's position are the Ninth Circuit cases of *Nicholas v. United States*, 527 F.2d 1160 (9th Cir.1976), and *United States v. Bartholdi*, 453 F.2d 1225 (9th Cir.1972), in which revocation of probation was allowed some one and two years, respectively, after the five-year maximum probationary period, because a bench warrant had been issued for the defendants.

It should be noted first that the government has presented no authority from *this* jurisdiction holding that probation can be revoked after the expiration of the statutory maximum period, even if a bench warrant has been issued for the defendant. Moreover, on close inspection, even the non-controlling cases the government does cite are distinguishable from the instant one. In all of these cases, the violation of probation that formed the basis for revocation occurred well within the five-year maximum period of probation. It was only *revocation* that occurred after the expiration of the maximum period.

In this case, by contrast, the conduct of the defendant that formed the basis for revocation occurred in 1982, clearly after the expiration of the maximum period in December of 1981. This distinction is of enormous importance, because it puts the defendant's conduct beyond the statutory authority of this Court. Accordingly, the Court was without jurisdiction to revoke the defendant's probation.

CONCLUSION

In sum, there are several reasons why this Court was without jurisdiction to revoke defendant's probation in August of 1982. First, Magistrate Kennedy was without authority to issue the bench warrant of May 5, 1978; second, the bench warrant was executed almost four full years after it was issued; and finally, the conduct that formed the basis for revocation of the defendant's probation occurred after the statutory maximum period of his probation had run. Accordingly, the Court shall issue an order, of even date herewith, vacating the sentence it has imposed on the defendant.