UNITED STATES of America, Plaintiff–Appellee,

v.

Harold Leroy FISHER, Defendant–Appellant.

No. 89–1478.

United States Court of Appeals, Fifth Circuit.

Feb. 15, 1990.

John Huffaker, Gibson, Ochsner & Adkins (Court–Appointed), Amarillo, Tex., for defendant-appellant.

Delonia A. Watson, Asst. U.S. Atty., Dallas, Tex., Marvin Collins, U.S. Atty., for plaintiff-appellee.

Before GEE, REAVLEY, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant, Harold Leroy Fisher (Fisher), appeals the district court's order revoking his probation and sentencing him to five years' imprisonment. We affirm.

### Facts and Proceedings Below

Following Fisher's guilty plea to counts two and four of an indictment, which counts charged Fisher with transporting a stolen tractor and trailer in interstate commerce in violation of 18 U.S.C. §§ 2312 and 2314, the United States District Court for the Middle District of Tennessee, Nashville Division, sentenced Fisher on July 2, 1980 to three years' imprisonment on count four, and on count two suspended imposition of sentence but ordered that Fisher serve five years' probation immediately after his release from prison on the count four sentence. Fisher met with his probation officer, Lewis Trammel (Trammel), immediately following the sentencing and signed a document agreeing to the terms of his probation.

Upon release from prison on January 2, 1983, after having completed his count four sentence, Fisher failed to report to the probation office to commence the probationary supervision. A year later, Trammel learned from an FBI agent that Fisher was incarcerated in a New Mexico county jail on state charges. He then contacted Fisher, speaking to him by telephone, and ordered Fisher to report to his office when released. After his April 1984 release, Fisher again absconded from supervision.

On February 19, 1985, Trammel filed in Fisher's case a petition for probation action with the United States District Court for the Middle District of Tennessee, Nashville Division, seeking a violator's warrant, which was issued, filed with the clerk of that court, and delivered to the marshal for service a few days later but never executed as Trammel and the marshal were unaware of Fisher's location. Trammel unsuccessfully attempted to locate Fisher through various means. He conducted a search for Fisher through a nationwide law enforcement computer network, spoke to the pro-

bation office and FBI bureau in New Mexico, and talked to Fisher's family as well as to a woman who claimed to be his wife.

In April 1985, the United States District Court for the Western District of Texas, El Paso Division, imposed a five-year sentence on Fisher for interstate transportation of a stolen vehicle in violation of 18 U.S.C. § 2312. Fisher remained in federal custody under that sentence at the La Tuna, Texas Federal Correctional Institution until January 21, 1988.

Following his January 1988 release from the referenced El Paso sentence, Fisher once again fell on the wrong side of the law and was arrested in Amarillo in February 1988 for interstate transportation of stolen property and a stolen vehicle. Some time after this arrest, a probation officer for the United States District Court for the Northern District of Texas, Amarillo Division, contacted Trammel and informed him of Fisher's whereabouts. Thereafter, on April 1, 1988, the United States District Court for the Middle District of Tennessee, Nashville Division, entered an order under 18 U.S.C. § 3653 transferring jurisdiction over Fisher's probation to the United States District Court for the Northern District of Texas, Amarillo Division.

On July 14, 1988, the Amarillo probation office filed an addendum to the 1985 petition for probation action (which alleged certain grounds "[i]n addition to the alleged violations reported on the petition dated February 19, 1985") seeking another violator's warrant, which the Amarillo district court issued the next day. Fisher was served and thereafter, following a November 3, 1988 probation revocation hearing, the Amarillo district court revoked Fisher's probation on May 15, 1989, and ordered that he serve a five-year prison term to run consecutively to another five-year term imposed by that court on October 6, 1988 for his conviction on the charges stemming from his February 1988 arrest in Amarillo.[1]

This appeal of the probation revocation order followed.

### Discussion

Fisher argues on appeal that as a result of the time lapse between the issuance of the violator's warrant in February 1985 and its execution in 1988, jurisdiction to revoke his probation was lost. He further contends that the revocation after the delay violated his Fifth Amendment right to due process and his Sixth Amendment right to a speedy trial.

The Probation Act,[2] 18 U.S.C. § 3651, et seq, provides in relevant part that:

> "At any time within the probation period, or within the maximum probation period permitted by section 3651 of this title [five years], the court for the district in which the probationer is being supervised or if he is no longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest for violation of probation occurring during the probation period."

The Act is drafted in terms of issuance of an arrest warrant and does not allude to the warrant's execution.

Courts encountering cases generally similar to this one have approached them from two different angles. The Ninth Circuit takes the position that in order to comport with due process, probation warrants must be executed within a reasonable time of their issuance. See United States v. Berry, 814 F.2d 1406, 1410 (9th Cir.1987); cf. McCowan v. Nelson, 436 F.2d 758, 760 (9th Cir.1970) (due process demands that parole violator warrants be executed within a reasonable time of their issuance); Simon v. Moseley, 452 F.2d 306, 309 (10th Cir.1971) (same). This authority focuses on the circumstances behind the delay in execution, considering the action or inaction of the

---

1. See United States v. Fisher, 868 F.2d 128 (5th Cir.1989).

2. Congress repealed the Act by The Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, § 212(a)(2), 98 Stat. 1987 (1984). Its provisions, however, remain applicable to offenses committed before November 1, 1987, and are therefore applicable to this case.

probationer as well as the government.[3] Another line of cases asserts that the probationary term is tolled and jurisdiction is extended for the period of time during which the probationer is not under probationary supervision because of his own wrongful action. *See United States v. Martin*, 786 F.2d 974, 975 (10th Cir.1986) (state imprisonment tolls probationary term); *United States v. Workman*, 617 F.2d 48, 51 (4th Cir.1980) (noting that probationary term may be tolled for period in which probationer is imprisoned for an unrelated state or federal offense or for the time during which probationer has absconded from supervision); *United States v. Gerson*, 302 F.2d 430, 431 (6th Cir.1962) (state imprisonment tolls term).[4]

Fisher rests his position that the court lacked jurisdiction to revoke his probation on *Simon* and *McCowan, supra,* as well as two district court opinions, *United States v. Paden*, 558 F.Supp. 636 (D.D.C.1983), and *United States v. Gernie*, 228 F.Supp. 329 (S.D.N.Y.1964). All four considered the issue in terms of due process. In both *Paden* and *Gernie,* the courts determined that the delays in execution following issuance of four and eleven years, respectively, were unreasonable *because* the probationers had not attempted to frustrate service of the warrants and had lived within the jurisdictions at the same locations, known to the government, for the entire period the warrants lay fallow. *Paden,* 558 F.Supp. at 639–40; *Gernie,* 228 F.Supp. at 338–39. The *Simon* court also ruled that the delay in execution of a parole violator's warrant was unreasonable, finding that the Parole Board had acted ineptly in attempting to locate the parolee and dilatorily in waiting seven years to execute the warrant.[5]

In *United States v. Williams,* 558 F.2d 224, 226–28 (5th Cir.1977), this Court recognized that a delay in executing a violator's warrant may frustrate a probationer's due process rights if the delay undermines his ability to contest the issue of the violation or to proffer mitigating evidence. This Court, however, did not reach the issue because the probationer had failed to demonstrate either type of prejudice. Similarly, Fisher has neither argued nor demonstrated any such prejudice, but instead contends that had the warrant been executed when issued in 1985, he could have served the sentence imposed following probation revocation concurrently with the one he was serving at La Tuna from 1985 to 1988. The Supreme Court rejected virtually the same argument in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), in which it ruled that a parolee is not constitutionally entitled to a parole revocation hearing immediately after the issuance of a parole violation warrant. In reaching its decision, the Court reasoned that the deferral of the parole revocation decision until execution of the warrant does not deprive the parolee of the opportunity to serve any sentence imposed for the crimes committed while on parole because if the Parole Commission chooses to revoke parole, it has the discretion to grant, retroactively, concurrent sentences. *Id.* 97 S.Ct. at 279. The district court here recognized this same discretion when imposing a sentence following the revocation of Fisher's probation.

---

3. The decisions consider such factors as whether the probationer had absconded from the jurisdiction or was imprisoned for another offense during the probationary period. They also examine the reasons behind the government's delay in execution of the warrant. *See Berry,* 814 F.2d at 1410; *United States v. Hill,* 719 F.2d 1402, 1404–05 (9th Cir.1983).

4. This line of cases also includes some Ninth Circuit authority. In discussing actions which could lead to a conclusion that a delay in execution of a warrant was unreasonable, the Ninth Circuit has stated that "issuance of a warrant may extend the jurisdiction to hear the probation violation if a probationer is imprisoned for another offense or voluntarily absents himself from the jurisdiction." *Berry,* 814 F.2d at 1410. This suggests an implicit tolling of the probationary period (and the time in which execution must occur) during the time the probationer is not under probation supervision because of his own willful action.

5. The Board had lodged a detainer with a penal institution different from the one at which the parolee was serving a sentence for a separate offense even though the Board had been informed of the parolee's true whereabouts.

Following the rationale of either the due process or the tolling cases, Fisher's contention that the district court lacked jurisdiction or authority to revoke his probation must fail. Fisher has not shown the type of specific prejudice envisioned in *Daggett* or *Williams, supra,* that would warrant reversal of the district court's decision. Further, Fisher has not demonstrated that the delay in execution of the warrant was sufficiently egregious to meet the test of *Berry* or *Moseley, supra,* so far as we might be inclined to take the general approach of those cases. The facts reveal that Trammel made a good faith effort to locate Fisher both before and after the issuance of the violator's warrant.[6] The government in no way attempted to conceal from Fisher the warrant, which was at all times a matter of public record in the court that had imposed the probation. Fisher certainly was aware that he was in violation of the terms of his probation, given that he had left the Tennessee jurisdiction without having reported for supervision and that Trammel had contacted him in the New Mexico prison ordering that he report for supervision upon release. As soon as authorities in Amarillo realized that Fisher was a probation violator, they effected a probation transfer, obtained a warrant from their jurisdiction, and executed it. In light of Fisher's actions and inaction which necessarily tended to frustrate execution of the warrant, we cannot say that the delay in execution resulted in a denial of Fisher's due process rights. Thus, in keeping with the litany of due process decisions, the issuance of the warrant in accordance with section 3653 properly extended jurisdiction beyond the five-year maximum probationary term established by that section. *See Hill,* 719 F.2d at 1404. Additionally, consistent with the tolling authority, the five-year period would have tolled for the time during which Fisher was not under probationary supervision as a result of his own wrongful action or inaction, thus extending the court's jurisdiction over Fisher.[7] *See Workman,* 617 F.2d at 51; *Paden,* 558 F.Supp. at 640 n. 2. The district court clearly retained jurisdiction to revoke Fisher's probation under either the due process or the tolling approach to this issue.[8]

Fisher also argues on appeal that the revocation of his probation after the delay in executing the warrant violated his Sixth Amendment right to a speedy trial. This contention must fail also, as this Court has ruled that the Sixth Amendment does not apply to probation revocation because it is not a criminal prosecution. *Williams,* 558 F.2d at 226.

As his final argument, Fisher asserts that the five-year sentence the court imposed following the probation revocation, which is to run consecutively to the October 6, 1988 sentence imposed for the Amarillo conviction, is unreasonable and should be set aside. Fisher contends that in imposing sentence the court failed to consider the assistance he gave Amarillo police by providing them with information that led to

---

6. Even if the government's efforts to execute the warrant could be characterized as seriously negligent, they were clearly not so egregious as to present any due process issues under all the circumstances here.

7. The district court, in revoking probation, found violations both as alleged in the February 19, 1985 application for warrant and an April 1985 violation alleged as an additional ground in the July 14, 1988 application for warrant. Each of the grounds found was properly established and supports the revocation. Moreover, the former grounds are properly considered because of the issuance of the Tennessee warrant within the five-year period; the latter is properly considered because tolling made the Texas warrant timely.

Whether or not the five-year period has been tolled, due process concerns might arguably in certain extreme circumstances dictate that delay in execution of the warrant divests the court of jurisdiction to revoke, or otherwise prevents revocation of, the probation. We need not determine that question, however, because nothing approaching such extreme circumstances is present here; and, as we have noted, there is no showing of material prejudice to Fisher's ability to contest the issue of probation violation or to prevent his presentation of mitigating evidence.

8. We do not here embrace one approach to the exclusion of the other, but instead note that the district court retained jurisdiction to revoke Fisher's probation under any understanding which we are willing to accept of either rationale.

the arrest of two drug producers. Section 3653 permits a court that originally suspended imposition of sentence to "impose any sentence which might originally have been imposed" following revocation of probation. Nothing Fisher points to indicates that the sentence was not one which originally could have been properly imposed. Nothing indicates any error of law, improper procedure, consideration of legally invalid factors, or even arbitrariness (assuming, *arguendo*, that in extreme circumstances we could properly review on that account), on the part of the district court. Therefore, we cannot conclude that the sentence was invalid.

### Conclusion

For the foregoing reasons, the district court's order revoking Fisher's probation and imposing a five-year sentence is

AFFIRMED.