**John H. BARKER, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 90–30.**

Supreme Court of Iowa.

Dec. 24, 1991.

---

**2.** Coleman did not testify at Jones' postconviction hearing.

Linda Del Gallo, State Appellate Defender, and Brian K. Sissel and Kevin Cmelik, Asst. State Appellate Defenders, for appellant.

Bonnie J. Campbell, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., Fred H. McCaw, County Atty., and Ralph Potter, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

This case presents the question of whether a delay of approximately four years between the issuance of an arrest warrant for a probation violation and the execution of that warrant denied appellant, John H.

Barker, due process of law. Under the present record, we conclude it did not.

Accordingly, on further review we vacate the court of appeals decision and affirm the judgment of the district court.

I. *Background facts and proceedings.* In 1982, Barker was convicted and sentenced for second-degree burglary and possession of burglary tools. *See* Iowa Code §§ 713.1, 713.3, 713.4 (1981). Upon his appeal, our court of appeals affirmed the convictions, but remanded the case for resentencing. On April 29, 1983, Barker was resentenced to two concurrent, indeterminate ten-year prison terms on the two charges. *See* Iowa Code § 902.9(3) (1983). However, the sentences were suspended and Barker was placed on probation for a period of two years. *See* Iowa Code §§ 907.1, 907.5–907.8. Barker was allowed to move to Texas to serve his probation. However, after about one month in Texas, Barker moved to Missouri.

In June 1983, the Iowa department of correctional services requested the State of Missouri to accept supervision of Barker. However, the department received a notice of Missouri's refusal to accept supervision of Barker, along with a report that Barker had been arrested for felony stealing. The apparent reason for Missouri's refusal to accept supervision of Barker was due to Barker's failure to appear for a scheduled probation interview in Missouri. Barker's probation officer also noted that, as of August 1983, Barker's mother did not know Barker's location. The last mail contact Barker made with the department was on July 21, 1983.

On September 1, 1983, in an attempt to contact Barker, Barker's probation officer called Barker's sister who said that he was in jail. On September 15, 1983, Barker called that officer. During their telephone conversation, the officer informed Barker that he was delinquent in maintaining contact with the department, and that a violation report would be submitted to the district court. The officer questioned Barker about an arrest and conviction in Kansas, notifying Barker that he would have to return to Dubuque for probation revocation proceedings. Shortly thereafter, the department filed a report of probation violation with the district court. On October 26, 1983, the district court issued a warrant for Barker's arrest for violating the terms and conditions of his probation. *See* Iowa Code § 908.11.

In November 1983, the Iowa probation officer had another telephone conversation with Barker. During this conversation, Barker indicated that he was aware of the warrant for his arrest, but "refused to return to Iowa unless the warrant was quashed." The warrant was never quashed and Barker did not voluntarily return to Iowa.

In February 1985, Barker was incarcerated in Missouri for possession of burglary tools. The Dubuque County attorney's office instituted extradition proceedings but did not complete them in a timely manner.[1] Thereafter, Barker was released from custody.

In October 1986, Barker again was arrested, in Indianola, Iowa, for possession of burglary tools. He served six days in jail and was placed on probation. At that time, Barker was not arrested based on the outstanding October 26, 1983, probation violation warrant. However, in September 1987, Barker was arrested in Coralville, Iowa, on other charges. The outstanding warrant ultimately was executed on January 14, 1988, approximately four years and three months after its issuance on October 26, 1983. Barker's probation thereafter was revoked and the original incarceration sentence was imposed.

Barker filed an application for postconviction relief. *See* Iowa Code §§ 663A.2(5), 663A.3 (1987). He asked that the revocation of his probation be set aside and that he be released from custody and sentence. The district court denied the application after an evidentiary hearing.

Barker then appealed, contending that he was denied due process of law by the delay between the issuance and execution of the arrest warrant. *See* U.S. Const.Amends.

1. The record does not reveal why extradition was not completed in a timely manner.

V, XIV; Iowa Const. art. I, § 9. Our court of appeals, in a split decision, reversed the district court's denial of postconviction relief. It concluded that the delay was unreasonable and denied Barker due process.

We granted the State's application for further review. The State asserts that the delay did not deny Barker due process. More specifically, the State contends that Barker's transience during the four-year period frustrated the State's efforts to execute the warrant and the delay did not cause Barker any actual prejudice.

■ II. *Delay in execution of the arrest warrant.* Postconviction relief actions are usually reviewed on error. *Kane v. State,* 436 N.W.2d 624, 626 (Iowa 1989). However, if a violation of a constitutional right is alleged we will make an independent evaluation of the totality of the circumstances in a de novo type review. *Polly v. State,* 355 N.W.2d 849, 854 (Iowa 1984).

■ A. As an initial matter, we note that the district court held Barker's probation revocation hearing and revoked his probation *after* Barker's two-year probation period had expired. However, after the initial filing of the report of probation violation, a warrant for Barker's arrest to appear for a probation revocation hearing was issued on October 26, 1983, Iowa Code section 908.11, less than six months after Barker received a suspended sentence and was placed on probation. We have held that where, as here, the application to revoke probation is filed during the probation period, the district court retains jurisdiction to conduct a hearing and revoke the probation even after the original probation period has expired. *State v. Jensen,* 378 N.W.2d 710, 712–13 (Iowa 1985). The district court in this case therefore had jurisdiction to revoke Barker's original probation, even though at the time of the revocation, Barker's original probation period had expired.

■ B. The United States Supreme Court has held that the conditional freedom granted a state probationer is a liberty interest protected by the due process guarantees of the United States Constitution. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). However, the Court has also recognized that the full panoply of rights due a defendant in a criminal proceeding is not due a probationer because probation revocation proceedings are not a part of the criminal prosecution. *Id.* at 789, 93 S.Ct. at 1763, 36 L.Ed.2d at 666; *see also Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972) (parole revocation proceedings).

■ As a general rule, the issuance of an arrest warrant does not indefinitely extend a court's jurisdiction over a probationer who is alleged to have violated the terms of his probation. *See, e.g., United States v. Strada,* 503 F.2d 1081, 1084 (8th Cir. 1974); *United States v. Berry,* 814 F.2d 1406, 1410 (9th Cir.1987); *United States v. Hill,* 719 F.2d 1402, 1405 (9th Cir.1983). More specifically, it has been recognized that a long delay between issuance and execution of an arrest warrant may be unreasonable, constituting a denial of due process that may deprive a court of jurisdiction over a probation violator. *Strada,* 503 F.2d at 1084. However, because due process is a flexible concept, we must examine the facts of each case to determine the constitutionally required procedures. *Id.* at 1085; *see also Shelton v. United States Bd. of Parole,* 388 F.2d 567, 574 (D.C.Cir.1967) (what constitutes a reasonable delay will of necessity vary with the facts of each case).

■ Our examination of the various court decisions in this area reveals that the length of the delay between issuance and execution of an arrest warrant is not alone dispositive in determining whether a probationer's due process rights have been violated; it is only one of several factors we must consider in making a determination of reasonableness. Other factors that we must consider in deciding whether a delay violates due process include: (1) the State's diligence in attempting to serve the warrant; (2) the reasons behind the State's delay in executing the warrant; (3) the conduct of the probation violator in frustrating service of the warrant; and (4) any

actual prejudice suffered by the probation violator as a result of the delay. *See, e.g., United States v. Fisher,* 895 F.2d 208, 210–11 & n. 3 (5th Cir.1990), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2192, 109 L.Ed.2d 520 (1990); *Berry,* 814 F.2d at 1409–10; *Hill,* 719 F.2d at 1405; *Shelton,* 388 F.2d at 574. We believe that application of these considerations to the facts of this case supports our conclusion that the delay between issuance and execution of Barker's arrest warrant was reasonable, and thus Barker's due process rights were not violated.

Although there was a delay of over four years between the issuance and execution of Barker's arrest warrant, we do not believe that this was due to any lack of diligence by the State in locating Barker and serving the warrant. We note that Barker spent the great majority of the intervening time outside the State of Iowa, and that Iowa officials had to rely on other states' officials to successfully apprehend Barker.

Additionally, Barker's probation officer notified Barker about the pending revocation proceedings and the existence of the arrest warrant. The officer also requested that Barker return to Iowa for the revocation proceedings, a request Barker ignored. *Cf. Fisher,* 895 F.2d at 209–10, 212 (government made good faith attempt to locate defendant where, *inter alia,* probation officer made phone calls to defendant's family members but was unable to locate defendant).

Officials from the State of Iowa also attempted to place Barker under the supervision of Missouri officials. However, the Missouri officials rejected supervision of Barker, apparently due to his failure to comply with their probation procedures. When Iowa officials learned of Barker's incarceration in Missouri, they attempted, albeit unsuccessfully, to extradite Barker to Iowa.[2] And when Iowa officials learned of Barker's arrest in Coralville, Iowa, where they could readily execute the arrest warrant, they did so. Although Barker

had spent time in an Indianola jail prior to his arrest in Coralville, during which time State officials failed to act on the outstanding warrant, we do not believe this fact alone means that the State thereby failed to exercise due diligence in executing the warrant. It is not fair to expect officials to remain in a state of constant readiness to pounce on scattered opportunities to execute a warrant for the arrest of a transient person, such as Barker, who was difficult to locate and who tended to avoid Iowa.

Indeed, Barker's transience served to actively frustrate execution of the arrest warrant. Our review of the record reveals that Barker moved from state to state after issuance of the arrest warrant. He was arrested in no less than four states before its execution. As early as August 1983, Missouri officials notified Iowa officials that Barker's mother was unaware of her son's location. And during this entire period of time, Barker was aware of the pending probation violation charges, as well as of the existence of the warrant for his arrest, yet failed to maintain any contact with Iowa officials as he was required to do. *See Fisher,* 895 F.2d at 212 (defendant frustrated service of warrant by his voluntary absence from the jurisdiction and his failure to provide information regarding his location); *cf. United States v. Gernie,* 228 F.Supp. 329, 338–39 (S.D.N.Y.1964) (delay in execution unreasonable where government could easily have located defendant but made no attempt to do so).

Barker had even told his probation officer that he would not return to Iowa "unless the warrant was quashed." We believe that an alleged probation violator such as Barker, who has succeeded in evading the authorities, is in no position to complain of a delay in the execution of an arrest warrant. *Accord State v. Nungesser,* 269 N.W.2d 449, 450 (Iowa 1978) (parole violator could not complain of due process violation for not receiving notice of his parole revocation hearing where he had left the state and absented himself from his parole officer); *see also Shelton,* 388

---

**2.** Any such attempt by the State which fails to result in extradition is not a waiver by the State of any of its right or power to try or punish the demanded person for any crime committed in this state. *See* Iowa Code § 820.26.

F.2d at 574; *Hill,* 719 F.2d at 1405 (delay in execution of warrant unreasonable where, *inter alia,* defendant did not contribute to delay).

Finally, we find it especially significant that Barker has made no mention whatsoever, aside from conclusory allegations, as to how the delay in the execution of his arrest warrant prejudiced his right to a fair revocation proceeding. There has been no showing, nor does the record otherwise indicate, that the delay undermined Barker's ability to contest the issue of his probation violation or to present mitigating evidence. *Cf. Shelton,* 388 F.2d at 574 (remanding for lower court to determine if death of witness prejudiced parole violator's ability to present mitigating evidence); *see also United States v. Williams,* 558 F.2d 224 (5th Cir.1977) (thirteen-month delay in execution of warrant did not prejudice probationer where testimony of deceased witness would have been merely cumulative). Barker knew of the outstanding warrant from the time it was issued. He easily could have returned to Iowa at any time before the warrant's execution in order to present a defense to the charge that he had violated the conditions of his probation, yet chose not to do so. We conclude that once Barker learned of the issuance of the arrest warrant, he could not later validly complain that he was prejudiced by the delay in its execution.

Based upon the foregoing, we hold that Barker was not denied due process of law by the delay between the issuance and execution of his arrest warrant.

III. *Disposition.* Because we conclude the delay was reasonable under this record, Barker's due process rights were not violated. We therefore vacate the decision of the court of appeals and affirm the judgment of the postconviction court denying Barker's application for postconviction relief.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.