FILED

October 9 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

05-496

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 338

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DENNIS EUGENE WEST,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC 2001-032(c)
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Lisa S. Korchinski, Assistant
          Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, C. Mark Fowler,
          Assistant Attorney General, Helena, Montana

          Brant S. Light, Cascade County Attorney, Susan Weber, Chief Deputy
          Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  August 9, 2007

Decided:  October 9, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     The District Court for the Eighth Judicial District, Cascade County, found that Dennis West had violated a condition of his suspended sentence. The court accordingly revoked the sentence and resentenced West to the Department of Corrections. West now appeals, contending that the nearly 26-month delay in bringing him before the District Court on the alleged violation constituted "unnecessary delay" under § 46-18-203(4), MCA, and infringed his rights to due process under the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution.

¶2     We conclude that revoking West's suspended sentence notwithstanding the 26-month delay in bringing him before the District Court implicates his due process rights. However, we have determined that the factual record presently before this Court is not adequate for deciding this claim on the merits. Accordingly, we set out the relevant legal principles in this Opinion and then remand the case to the District Court for further proceedings consistent with this Opinion.

**BACKGROUND**

¶3     The State charged West in Cause No. BDC-01-032(c) with burglary (a felony) and criminal mischief, possession of burglary tools, and unlawful use of a computer (all misdemeanors). These offenses were committed on or about January 14, 2001. West and the State ultimately entered into a plea agreement under § 46-12-211(1)(b), MCA (1999). West pleaded guilty to burglary and criminal mischief, the State dismissed the other two charges, and the District Court accepted the plea agreement. The court then sentenced West on April 16, 2002, to the Department of Corrections ("DOC") for 20 years with 15

2

years suspended on the burglary charge and to the Cascade County Detention Center for 6 months on the criminal-mischief charge. These sentences were to run concurrently. The court also included the proviso that "[p]rior to the Defendant's release into the community, he is required to enter and successfully complete a pre-release program." Defense counsel thereafter filed a motion to withdraw as counsel, which the court granted on July 1, 2002.

¶4 West was placed at the Montana State Prison ("MSP") on April 24, 2002. According to his probation officer, West had a "good adjustment" at MSP, progressed to lower custody levels, received satisfactory housing and work reports, had clear conduct, and completed treatment mandates. On November 5, 2002, he was placed in the Treasure State Correctional Training Center (colloquially referred to as "Boot Camp"), but three weeks later, he escaped from Boot Camp on horseback. West was apprehended and returned to MSP.

¶5 The State then charged West in the District Court for the Third Judicial District, Powell County, with felony escape (Cause No. DC-02-69). West pleaded guilty, and the court sentenced him on December 19, 2002, to two years at MSP, to run consecutively to the term of imprisonment already being served.

¶6 The State next filed a petition in the Eighth Judicial District Court on April 2, 2003, seeking revocation of West's suspended sentence in Cause No. BDC-01-032(c) based on his escape from Boot Camp. The State requested that "a copy of this petition be served upon the defendant" and that "a Warrant of Arrest be issued for the apprehension of defendant." The District Court issued a bench warrant the following day (April 3),

3

commanding that West be arrested and brought before the court to answer the State's petition. The court also issued a separate Order for Revocation of Suspended Sentence (also dated April 3), ordering that "a copy of the Petition be served upon the defendant as well as a copy of this Order."

¶7 The record reflects that the Warrant Department of the Cascade County Sheriff's Office received the arrest warrant on April 4, 2003, but that the warrant was not executed until May 25, 2005—over two years later. The record also reflects that West was in the State's custody or under the State's supervision during this entire period.

¶8 West was brought before the District Court on May 31, 2005, at which time he answered "not true" to the alleged violation of his suspended sentence. The court held an evidentiary hearing on June 14, 2005, at which time the court took judicial notice of the Powell County judgment in Cause No. DC-02-69 and found that West had committed the alleged violation.

¶9 The court and the parties then proceeded with disposition. The prosecutor recommended that the court revoke the 15-year suspended portion of West's original 20-year sentence and impose in its place a sentence of 15 years with 10 suspended. (Under this recommendation, West's original sentence of 20 years with 15 suspended would effectively be converted into a sentence of 20 years with 10 suspended.) In response, defense counsel argued that the court should reimpose the original sentence, since West had already been penalized for the escape by virtue of the 2-year consecutive sentence imposed by the Third Judicial District Court. In addition, counsel observed:

4

Your Honor, I would also like the Court to take into consideration this case, for reasons unbeknownst to myself or [the prosecutor], I don't know why this case is languished, but the Court noticed earlier his report of violation is March 21st 2003, over two years ago, Your Honor. I don't know why this could not have been taken care of two years ago. Mr. West has been incarcerated or under the State's umbrella all that time. This could have been handled a couple years ago but I don't have any explanation to offer to the Court why it has not been -- why that has not happened, Your Honor.

It seems like this case is languished and now, even though he's already been given a consecutive term for his escape, I think that is a sufficient reason for the Court to, in effect, reinstate the same sentence that Mr. West had before for the underlying charge, Your Honor, and I ask the Court to take those factors into consideration.

¶10 Notwithstanding, the District Court adopted the State's recommendation. The court revoked the 15-year suspended portion of West's original sentence and resentenced him to DOC for 15 years with 10 years suspended. West now appeals.

## ISSUES

¶11 West articulates four issues in his opening brief, which boil down to two basic questions: first, did the delay in executing the arrest warrant and bringing him before the District Court to answer the State's petition for revocation constitute "unnecessary delay" under § 46-18-203(4), MCA, or infringe his constitutional rights to due process under the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution (West's "delay claim"); and second, is the new sentence imposed by the District Court following the revocation of his 15-year suspended sentence illegal (West's "sentencing claim")? We need not reach the second question until the first question has been resolved. Thus, because we are remanding this case for further proceedings on West's delay claim, we do not consider his sentencing claim (Issue IV in

5

his opening brief) in this Opinion. We expect that this case will come back before this Court following the proceedings in the District Court, and we will address West's sentencing claim at that time, if it is necessary to do so.

¶12 The State contends that West's delay claim is procedurally barred because he did not properly preserve the issue in the District Court. West argues, however, that we should address this claim pursuant to our common-law doctrine of plain error review. Accordingly, we will address the following two questions in this Opinion:

1. Is West's delay claim procedurally barred?

2. Did the 26-month delay in executing the arrest warrant and bringing West before the District Court to answer the State's petition for revocation constitute "unnecessary delay" under § 46-18-203(4), MCA, or infringe his constitutional rights to due process?

## STANDARDS OF REVIEW

¶13 This Court's review of questions regarding constitutional law is plenary. *State v. LaFreniere*, 2008 MT 99, ¶ 7, 342 Mont. 309, ¶ 7, 180 P.3d 1161, ¶ 7. Likewise, the interpretation and construction of a statute is a matter of law; thus, we review de novo whether the district court interpreted and applied the statute correctly. *See State v. Weaver*, 2008 MT 86, ¶ 10, 342 Mont. 196, ¶ 10, 179 P.3d 534, ¶ 10; *State v. Clark*, 2006 MT 313, ¶ 7, 335 Mont. 39, ¶ 7, 149 P.3d 551, ¶ 7.

## DISCUSSION

¶14 ***Issue 1. Is West's delay claim procedurally barred?***

6

¶15 As a preliminary matter, we must consider the State's argument that West's claim concerning the delay in bringing him before the District Court is procedurally barred.

¶16 As a general rule, a party may raise on direct appeal only those issues and claims that were properly preserved. *See State v. Rosling*, 2008 MT 62, ¶ 76, 342 Mont. 1, ¶ 76, 180 P.3d 1102, ¶ 76; *State v. Spotted Blanket*, 1998 MT 59, ¶ 13, 288 Mont. 126, ¶ 13, 955 P.2d 1347, ¶ 13. To properly preserve an issue or claim for appeal, it is necessary that the issue or claim be timely raised in the first instance in the trial court. *See* § 46-20-104(2), MCA; *State v. Buck*, 2006 MT 81, ¶ 117, 331 Mont. 517, ¶ 117, 134 P.3d 53, ¶ 117; *State v. Paoni*, 2006 MT 26, ¶ 16, 331 Mont. 86, ¶ 16, 128 P.3d 1040, ¶ 16; *In re T.E.*, 2002 MT 195, ¶ 20, 311 Mont. 148, ¶ 20, 54 P.3d 38, ¶ 20. We explained in *Day v. Payne*, 280 Mont. 273, 929 P.2d 864 (1996)—and the notion has been carried forward in numerous cases—that an issue must be raised first in the trial court because " 'it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider.' " *Day*, 280 Mont. at 276-77, 929 P.2d at 866 (quoting 5 Am. Jur. 2d *Appellate Review* § 690 (1995)). This mantra, however, which the *Day* court adopted from secondary authority, does not accurately encapsulate the principal purpose of the timely-objection rule.

¶17 Above all else, the rationale underlying the timely-objection rule is judicial economy and "bringing alleged errors to the attention of each court involved, so that actual error can be prevented or corrected at the first opportunity." *City of Missoula v. Asbury*, 265 Mont. 14, 20, 873 P.2d 936, 939 (1994) (citing *State v. Applegate*, 591 P.2d 371, 373 (Or. App. 1979)). As aptly summarized in *Applegate*:

7

There are many rationales for the raise-or-waive rule: that it is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to a court; that fairness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to; that the rule promotes efficient trial proceedings; that reversing for error not preserved permits the losing side to second-guess its tactical decisions after they do not produce the desired result; and that there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right. The principal rationale, however, is judicial economy. There are two components to judicial economy: (1) if the losing side can obtain an appellate reversal because of error not objected to, the parties and public are put to the expense of retrial that could have been avoided had an objection been made; and (2) if an issue had been raised in the trial court, it could have been resolved there, and the parties and public would be spared the expense of an appeal.

*Applegate*, 591 P.2d at 373; *accord United States v. Vontsteen*, 950 F.2d 1086, 1089-90 (5th Cir. 1992); *Commonwealth v. Bly*, 830 N.E.2d 1048, 1057 (Mass. 2005); *Napier v. Jacobs*, 414 N.W.2d 862, 864 (Mich. 1987).

¶18     In the case at hand, West contends that he adequately raised his delay claim in the District Court. He cites defense counsel's observations during the disposition hearing that this case had "languished" in the system for two years even though West was "incarcerated or under the State's umbrella" that entire time. We agree with the State, however, that when read in context, these observations were—as defense counsel put it at the time—"factors" for the court to take into consideration when determining the proper sentence to impose. Counsel was in essence arguing for leniency; he did not in any way challenge the propriety of the proceedings themselves, move to dismiss the petition for revocation, or otherwise suggest that the delay in bringing West before the court

8

constituted a statutory or due process violation. Accordingly, we conclude that this issue was not properly preserved in the District Court.

¶19 While the timely-objection rule, as discussed above, serves a number of important purposes, it nonetheless is subject to a few narrow exceptions. The Legislature, for instance, has authorized review of a belatedly raised claim if "the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application"; if "the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of"; or if "material and controlling facts upon which the claim is predicated were not known to the convicted person or the convicted person's attorney and could not have been ascertained by the exercise of reasonable diligence." Section 46-20-701(2), MCA. We also note that jurisdictional issues, because they concern the power and authority of a court to hear and decide the matters before it, transcend procedural considerations and may be raised at any time. *See State v. Reeder*, 2004 MT 244, ¶ 4, 323 Mont. 15, ¶ 4, 97 P.3d 1104, ¶ 4; *Stanley v. Lemire*, 2006 MT 304, ¶¶ 30-32, 334 Mont. 489, ¶¶ 30-32, 148 P.3d 643, ¶¶ 30-32; *Davis v. State*, 2008 MT 226, ¶ 20, 344 Mont. 300, ¶ 20, 187 P.3d 654, ¶ 20. Likewise, this Court may review any sentence imposed in a criminal case, whether objected to or not, if the defendant raises a plausible allegation that the sentence is illegal or exceeds statutory mandates. *See State v. Southwick*, 2007 MT 257, ¶¶ 21-23, 339 Mont. 281, ¶¶ 21-23, 169 P.3d 698, ¶¶ 21-23; *State v. Kotwicki*, 2007 MT 17, ¶ 18, 335 Mont. 344, ¶ 18, 151 P.3d 892, ¶ 18; *State v. Garrymore*, 2006 MT 245, ¶¶ 10-15, 334 Mont. 1, ¶¶ 10-15, 145 P.3d 946, ¶¶ 10-15;

9

*State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979).   None of these exceptions applies to West's delay claim.

¶20    West thus relies on another exception to the timely-objection rule:   this Court's inherent power of plain error review.  *See State v. Finley* ("*Finley I*"), 276 Mont. 126, 137, 915 P.2d 208, 215 (1996), *overruled in part on other grounds*, *State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, ¶ 21, 19 P.3d 817, ¶ 21.   West contends that we should invoke this doctrine to review his delay claim.   For ease of analysis, we will consider the doctrine's applicability to his statutory and constitutional theories in turn.

¶21    First, as noted above, West relies on § 46-18-203, MCA (1999),[1] which states, in pertinent part:

> (1) Upon the filing of a petition for revocation showing probable cause that the offender has violated any condition of a sentence or any condition of a deferred imposition of sentence, the judge may issue an order for a hearing on revocation.  The order must require the offender to appear at a specified time and place for the hearing and be served by delivering a copy of the petition and order to the offender personally.  The judge may also issue an arrest warrant directing any peace officer or a probation officer to arrest the offender and bring the offender before the court.
>
> .   .   .
>
> (4) Without unnecessary delay, the offender must be brought before the judge . . . .

---

[1] The law in effect at the time an offense is committed controls as to the possible sentence for the offense, as well as a revocation of that sentence.  *State v. Brister*, 2002 MT 13, ¶ 26, 308 Mont. 154, ¶ 26, 41 P.3d 314, ¶ 26; *State v. Rudolph*, 2005 MT 41, ¶ 16, 326 Mont. 132, ¶ 16, 107 P.3d 496, ¶ 16; *State v. Tracy*, 2005 MT 128, ¶¶ 16-17, 327 Mont. 220, ¶¶ 16-17, 113 P.3d 297, ¶¶ 16-17.  West's offenses were committed on or about January 14, 2001; thus, the 1999 version of the Montana Code Annotated applies.

West contends that the State "caused unnecessary delay and violated Mont. Code Ann. § 46-18-203 when it failed to serve West with the warrant for over two years."

¶22 We will not address this statutory-based claim under the doctrine of plain error review. As explained in *Finley I*, §§ 46-20-104(2) and -701, MCA, "uniquely restrict[ ] review of errors not objected to at trial." *See Finley I*, 276 Mont. at 133, 915 P.2d at 212-13. Section 46-20-104(2), MCA, states that "[f]ailure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2)." Section 46-20-701(2), MCA, in turn, enumerates specific criteria (*see* ¶ 19, *supra*) under which a claim not raised in the trial court may be reviewed. None of these criteria, however, applies here; and it would be incongruous for this Court to review West's statutory-based claim notwithstanding the statutory-based prohibition on our doing so.

¶23 That leaves us with the question of whether West's constitutional-based delay claim is appropriate for plain error review. We explained in *Finley I* that "[a]ppellate courts have the inherent duty to interpret the constitution and to protect individual rights set forth in the constitution and necessarily have the correlative authority to invoke the plain error doctrine in order to carry out those duties." *Finley I*, 276 Mont. at 134, 915 P.2d at 213. Thus, given our "inherent power and paramount obligation to interpret Montana's Constitution and to protect the various rights set forth in that document," we held that this Court may discretionarily review "claimed errors that implicate a criminal defendant's fundamental constitutional rights," even if a timely objection was not made in the trial court, and notwithstanding the inapplicability of the criteria set forth in § 46-20-701(2), MCA. *Finley I*, 276 Mont. at 137, 915 P.2d at 215. However, we

11

clarified that we use this doctrine "sparingly, on a case-by-case basis," and only where failing to review the claimed error "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Finley*, 276 Mont. at 137, 138, 915 P.2d at 215; *see also State v. Daniels*, 2003 MT 247, ¶ 20, 317 Mont. 331, ¶ 20, 77 P.3d 224, ¶ 20; *State v. Rosling*, 2008 MT 62, ¶ 77, 342 Mont. 1, ¶ 77, 180 P.3d 1102, ¶ 77. We must consider, therefore, whether West has made a threshold showing that his constitutional-based delay claim meets any of these three criteria.

¶24    West cites a number of cases for the proposition that "due process is violated if there is an unreasonable delay between the issuance and execution of a warrant for a probation violation." *See e.g. Barker v. State*, 479 N.W.2d 275, 278 (Iowa 1991) ("[A] long delay between issuance and execution of an arrest warrant may be unreasonable, constituting a denial of due process."); *United States v. Hill*, 719 F.2d 1402, 1405 (9th Cir. 1983) ("[A] warrant for arrest based on a probation or parole violation should be executed within a reasonable time after issuance."). In *State v. Flemming*, 907 P.2d 496 (Ariz. 1995), the trial court issued a warrant for Flemming's arrest on December 3, 1990, but the warrant was not served until March 16, 1993, even though Flemming was in the state's custody during the intervening period. The Arizona Supreme Court concluded that this "unseemly" and "inexplicable" delay violated the time periods set forth in the applicable Rule of Criminal Procedure, which had been adopted specifically to ensure that a probationer's due process rights were not violated by undue delay in probation-revocation procedures. *See Flemming*, 907 P.2d at 501-03. In *State v. Bennett*, 138 P.3d

1284 (Kan. App. 2006), the Kansas Court of Appeals held that revocation of Bennett's probation violated her due process rights because the delay of more than two years between the issuance of the probation-violation warrant (February 11, 2003) and Bennett's arrest on the warrant (March 14, 2005) was unreasonable. The court hinged its analysis on the fact that the government had failed to conduct a reasonable investigation into Bennett's whereabouts. *See Bennett*, 138 P.3d at 1286-88.

¶25    In addition to these cases cited by West, we note similar statements of the law in a number of other jurisdictions. *See e.g. Gaddy v. Michael*, 519 F.2d 669, 673 (4th Cir. 1975) ("[T]he warrant must be executed with reasonable dispatch and an extremely long delay between the issuance of an arrest warrant and its execution may be unreasonable and a deprivation of due process." (internal quotation marks omitted)); *United States v. Strada*, 503 F.2d 1081, 1084 (8th Cir. 1974) ("[A] long delay between the issuance of an arrest warrant and its execution may be unreasonable and a deprivation of due process."); *Simon v. Moseley*, 452 F.2d 306, 309 (10th Cir. 1971) ("The warrant must be executed within a reasonable time, depending on the circumstances of the particular case. Such a reasonable limitation is necessary to avoid violation of due process principles." (citations omitted)); *State v. Langley*, 711 So. 2d 651, 669 (La. 1998) ("An unreasonable delay in executing a parole violation warrant may violate a parolee's due process rights in some cases."); *State v. Kahl*, 814 P.2d 1151, 1153 (Utah App. 1991) ("Due process requires reasonable diligence on the part of the State in the issuance and execution of an arrest warrant for an alleged probation violation."); *see also State v. Jenkins*, 2006 MT 85, ¶¶ 14-15, 332 Mont. 34, ¶¶ 14-15, 134 P.3d 79, ¶¶ 14-15 (Warner, J., dissenting)

13

(concluding that due process required the city court to exercise "reasonable diligence" in the execution of its arrest warrant).

¶26 Although our prior cases have not squarely addressed the due process issue raised by West, we recognized in *State v. Finley* ("*Finley II*"), 2003 MT 239, 317 Mont. 268, 77 P.3d 193, that the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution protect the substantive and procedural rights of persons faced with a deprivation of liberty, and that revocation of a suspended or deferred sentence "can adversely implicate a probationer's liberty interests as seriously as the original determination of guilt." *Finley II*, ¶ 29; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 781-82, 93 S. Ct. 1756, 1759-60 (1973) (holding that the loss of liberty associated with probation revocation is "a serious deprivation" requiring that the probationer be accorded due process). We further observed in *Finley II* that the foundation of the guarantee of due process is fairness, which calls for "safeguards tailored to the demands of the particular legal context of probation revocation." *Finley II*, ¶ 29.

¶27 These same principles underlie the reasoning of the cases cited above. *See e.g. Barker*, 479 N.W.2d at 278; *Flemming*, 907 P.2d at 501; *Bennett*, 138 P.3d at 1287; *Langley*, 711 So. 2d at 669; *see also State v. Haines*, 39 P.3d 95, 96 (Kan. App. 2002). We join these courts in holding that the execution of a probation-violation warrant without unreasonable delay is one of the due process protections accorded defendants in the context of probation-revocation proceedings. While this appears to be mandated by the Fourteenth Amendment, we need not decide that question because we ground our holding on adequate and independent state-law grounds—namely, the due process

14

guarantee of Article II, Section 17, which is a "separate and enforceable constitutional right[ ] insofar as the jurisdiction of the State of Montana extends." *Madison v. Yunker*, 180 Mont. 54, 60, 589 P.2d 126, 129 (1978); *see also State v. Clark*, 1998 MT 221, ¶ 20, 290 Mont. 479, ¶ 20, 964 P.2d 766, ¶ 20 ("It is well-established . . . that we may interpret a provision of the Montana Constitution to afford greater protection than that afforded by its federal counterpart."); *State v. Barron*, 2008 MT 69, ¶ 17, 342 Mont. 100, ¶ 17, 179 P.3d 519, ¶ 17 ("[T]he Montana Constitution affords defendants their full panoply of rights without fail whenever the State chooses to charge an individual with a criminal offense." (citing, e.g., Mont. Const. art. II, § 17)); *State v. Johnson*, 221 Mont. 503, 514, 719 P.2d 1248, 1255 (1986) (" '[N]o federal issue is properly reached when the state's law protects the claimed right.' " (quoting Hans A. Linde, *E Pluribus—Constitutional Theory and State Courts*, 18 Ga. L. Rev. 165, 178 (1984))), *overruled in part on other grounds*, *State v. Buck*, 2006 MT 81, ¶ 48, 331 Mont. 517, ¶ 48, 134 P.3d 53, ¶ 48.

¶28 Applying the "without unreasonable delay" rule to West's situation, we conclude that he has made the requisite threshold showing that plain error review of his constitutional-based delay claim is appropriate. The State filed its petition on April 2, 2003, seeking revocation of West's suspended sentence and requesting that "a Warrant of Arrest be issued for the apprehension of defendant." The District Court granted the State's request and issued a bench warrant the following day, commanding that West be arrested and brought before the court to answer the State's petition. The Warrant Department of the Cascade County Sheriff's Office received the arrest warrant on April

15

4, 2003. The warrant was executed nearly 26 months later on May 25, 2005. None of these facts is disputed.

¶29 West contends that he was incarcerated and, thus, "directly under the State's custody" during the entire 26-month period. The probation officer's Report of Violation, dated March 21, 2003, supports this assertion: "Since returning to Montana State Prison from the Escape he will be placed at a higher custody level for a minimum of three years." Nevertheless, the State contends that West's assertion he was in the State's custody is "unsubstantiated." The State does not actually deny that West was continually incarcerated from April 2003 through May 2005, but this is the import of the State's argument—one which we find highly implausible on the record before us. In any event, it is clear that West was either incarcerated or under the State's supervision during the entire period in question, given his sentences: a commitment to DOC of 20 years with 15 years suspended imposed on April 16, 2002, in BDC-01-032(c), plus a consecutive sentence of 2 years at MSP imposed on December 19, 2002, in DC-02-69.

¶30 In sum, the record establishes that for nearly 26 months beginning on April 4, 2003, and running through May 25, 2005, the State of Montana (1) had in its possession a warrant for West's arrest, (2) had West in its custody or under its supervision, and (3) failed to execute the warrant. This is a quintessential example of "where failing to review the claimed error at issue . . . may compromise the integrity of the judicial process." *Finley I*, 276 Mont. at 137, 915 P.2d at 215. Hence, this is one of those rare instances in which plain error review is appropriate. We accordingly will proceed to address West's claim.

16

¶31 ***Issue 2. Did the 26-month delay in executing the arrest warrant and bringing West before the District Court to answer the State's petition for revocation infringe his constitutional rights to due process?***

¶32 "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972). Indeed, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria and Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 1748 (1961); *see also State v. Baird*, 2006 MT 266, ¶¶ 27-28, 334 Mont. 185, ¶¶ 27-28, 145 P.3d 995, ¶¶ 27-28 (noting that the minimum due process requirements for the revocation of a probationary sentence are not inflexible). Rather, " '[a]sserted denial [of due process of law] is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial.' " *County of Sacramento v. Lewis*, 523 U.S. 833, 850, 118 S. Ct. 1708, 1719 (1998) (quoting *Betts v. Brady*, 316 U.S. 455, 462, 62 S. Ct. 1252, 1256 (1942)).

¶33 Given the "flexible" nature of due process, we cannot say that a 26-month delay in executing a probation-violation warrant and bringing the defendant before the court amounts to a per se due process violation. The prohibition is against "unreasonable" delay, which contemplates a case-by-case analysis, not hard-and-fast rules. In other words, the question must be decided based on " 'an appraisal of the totality of facts in [the] given case.' " *County of Sacramento*, 523 U.S. at 850, 118 S. Ct. at 1719 (quoting

*Betts*, 316 U.S. at 462, 62 S. Ct. at 1256); *see also Simon v. Moseley*, 452 F.2d 306, 309 (10th Cir. 1971) ("The warrant must be executed within a reasonable time, depending on the circumstances of the particular case."); *Barker v. State*, 479 N.W.2d 275, 278 (Iowa 1991) ("[B]ecause due process is a flexible concept, we must examine the facts of each case to determine the constitutionally required procedures."); *State v. Kahl*, 814 P.2d 1151, 1153 (Utah App. 1991) ("To determine whether the State has executed the warrant in a reasonable time, a court must examine all the circumstances of the case." (internal quotation marks omitted)).

¶34 As the Iowa Supreme Court observed in *Barker*, based on its examination of the various decisions in this area, "the length of the delay between issuance and execution of an arrest warrant is not alone dispositive in determining whether a probationer's due process rights have been violated; it is only one of several factors we must consider in making a determination of reasonableness." *Barker*, 479 N.W.2d at 278; *accord State v. Langley*, 711 So. 2d 651, 669 (La. 1998). Other factors that courts have considered relevant to the analysis include the following: the State's diligence in attempting to serve the arrest warrant; the reasons behind the State's delay in executing the warrant; the conduct of the probation violator in frustrating or impeding service of the warrant (e.g., if he absconded from the jurisdiction or concealed his identity to avoid detection); whether the probation violator's whereabouts were known or readily ascertainable; and any actual prejudice suffered by the probation violator as a result of the delay (e.g., if the delay prejudiced his ability to defend against the petition for revocation). *See United States v. Fisher*, 895 F.2d 208, 210-11 (5th Cir. 1990); *United States v. Lee*, 941 F.2d 571, 573

(7th Cir. 1991); *State v. Flemming*, 907 P.2d 496, 501 (Ariz. 1995); *Barker*, 479 N.W.2d at 278-79; *State v. Bennett*, 138 P.3d 1284, 1287-88 (Kan. App. 2006); *Langley*, 711 So. 2d at 669, 670; *In re Zullo*, 653 N.E.2d 150, 152 (Mass. 1995); *People ex rel. Flores v. Dalsheim*, 413 N.Y.S.2d 188, 193 (N.Y. App. Div. 2 Dept. 1979); *Kahl*, 814 P.2d at 1153-54.

¶35  We agree that all of these factors are relevant in determining whether due process was satisfied, i.e., whether the State executed the arrest warrant and brought the defendant before the court without unreasonable delay.  But we do not suggest that these are the only factors which may be considered or that any one factor is dispositive.  To the contrary, we emphasize that all of the surrounding circumstances must be taken into account.

¶36  As an aside, we note that the factors identified above are reminiscent of the factors which inform the constitutional right to a speedy trial.  *See State v. Ariegwe*, 2007 MT 204, ¶¶ 107-111, 338 Mont. 442, ¶¶ 107-111, 167 P.3d 815, ¶¶ 107-111; *Barker v. Wingo*, 407 U.S. 514, 530-33, 92 S. Ct. 2182, 2192-93 (1972).  However, speedy trial precedents are not controlling here.  For one thing, the right to a speedy trial is available to an accused in a "criminal prosecution[ ]," U.S. Const. amend. VI; Mont. Const. art. II, § 24, and probation revocation "is not a stage of a criminal prosecution," *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 1759-60 (1973).  *Cf. Morrissey*, 408 U.S. at 480, 92 S. Ct. at 2600 ("Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."); *Finley II*, ¶ 29 ("[S]entence revocation is a

19

civil proceeding, thus, a probationer does not enjoy the same constitutional guarantees as a defendant facing criminal prosecution."). Moreover, the foundation of the due process right at issue here is "fairness," not "speedy trial," and the safeguards applicable to probation-revocation proceedings must be "tailored to the demands of [that] particular legal context." *Finley II*, ¶ 29.

¶37 Turning now to West's claim, we first must consider the parties' contentions concerning the adequacy of the record. In West's view, the record "illustrates the lack of due diligence by the State in executing the warrant." He argues that "no evidence could possibly exist to defend the State against its lack of due diligence in serving the warrant," given that he "was *incarcerated* (completely under the State's custody) during the two-year period between the warrant's issuance and execution." According to West, therefore, the record is adequate to permit intelligent review of his delay claim. The State, however, is adamant that West's claim "necessitates evidentiary development," particularly with respect to "why West's warrant was not timely enforced, whether State authorities acted with reasonable dispatch under all the circumstances, whether the defendant caused the delay, or if he suffered any prejudice due to the delay."

¶38 In essence, West suggests that a 2-year delay in executing an arrest warrant, when the named individual is in the State's custody during that entire period, is per se unreasonable. While this theory may have a certain intuitive appeal, it is contrary to the totality-of-the-circumstances approach outlined above. In this regard, the record is devoid of evidence concerning the reasons behind the State's delay in executing the arrest warrant. Although it may be difficult to fathom why the State took nearly 26 months to

20

do so even though West was in its custody or under its supervision that entire time, the State nevertheless must be given the opportunity at an evidentiary hearing to provide a meritorious justification. Likewise, the record is devoid of evidence concerning actual prejudice suffered by West as a result of the delay. West claims that his prerelease program application to Crossroads Correctional Center was rejected in May 2005 due to the outstanding arrest warrant from Cascade County; however, unsubstantiated assertions in an appellate brief are not evidence.

¶39 For these reasons, we conclude that the factual record presently before us is not adequate for deciding West's constitutional-based delay claim on the merits.

## CONCLUSION

¶40 In sum, West claims that the nearly 26-month delay in executing the arrest warrant and bringing him before the District Court to answer the State's petition for revocation infringed his constitutional rights to due process. Although West has made the requisite threshold showing that plain error review of this claim is appropriate, the record before us is too undeveloped to undertake a full analysis of the claim on the merits.

¶41 Accordingly, we remand this case to the District Court for an evidentiary hearing at which the parties may present evidence bearing on the question of whether the State's delay in executing the arrest warrant was unreasonable—including, but not limited to, the reasons behind the delay, any conduct by West that frustrated or impeded service of the warrant, and any actual prejudice suffered by West as a result of the delay. We instruct the District Court, following this hearing, to enter findings of fact and conclusions of law relevant to West's constitutional-based delay claim.

21

¶42     Remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ JOHN WARNER


Justice W. William Leaphart, dissenting.

¶43     I would affirm.

¶44     I agree with the Court that under the totality of the circumstances approach West had the burden of demonstrating actual prejudice as a result of the delay. I also agree that any claim that he was actually prejudiced when his application for the prerelease program was rejected, was unsubstantiated.

¶45     I dissent from the Court's remanding this matter for an evidentiary hearing to develop the record. Given that West failed to substantiate a claim of actual prejudice in the Court below, his claim fails. He is not entitled to another bite of the apple through a remand.

/S/ W. WILLIAM LEAPHART

Justice Brian Morris joins the dissent of Justice Leaphart.

/S/ BRIAN MORRIS