JUSTICE SANDEFUR,
dissenting.
¶34 I dissent. In 2008, for better or worse, in the manifest absence of any recognized uniform criteria for objective assessment of the demands of constitutional due process in the face of the State’s lack of diligence in the execution of arrest warrants issued on probation violations, this Court extended and built on the United States Supreme Court’s traditional four-factor Sixth Amendment speedy trial test from Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972) (the length of delay, the reason for delay, the defendant’s actual desire for speedy trial, and resulting prejudice to defendant), to craft a new, six-factor Montana Constitutional due process analog for assessing unreasonable State delay in executing on probation violation warrants. State v. West, 2008 MT 338, ¶¶ 22-36, 346 Mont. 244, 194 P.3d 683 (adopting a six-factor totality of the circumstances balancing test: length of delay, State diligence in attempting to arrest defendant, whether defendant impeded arrest, whether defendant’s whereabouts were known or readily ascertainable to State, reasons for State delay, and degree of resulting prejudice to defendant). The Court jumped onto this slippery slope despite its express recognition that the fundamental right to a speedy trial, guaranteed by the United States and Montana Constitutions, does not apply to probation revocation proceedings.
¶35 Any straight up application of the West factors to the undisputed facts of this case does not bode well for the State. Three of them—the length of the delay, the State’s diligence in executing on the warrant, and whether the defendant’s whereabouts were known or reasonably ascertainable—all weigh heavily against the State. Two of them—resulting prejudice and defendant impedance of State efforts—weigh moderately against the State. Only one of them—the reason for the State delay—weighs moderately in the State’s favor.
¶36 Four years and seven months—1,672 days—passed before the State arrested the defendant. The State, not the issuing court, unilaterally deemed the warrant a “Montana only” warrant. At all times pertinent, the State was well aware, or reasonably should have been on any diligent effort, of the defendant’s whereabouts. When it filed its probation revocation petition and obtained an arrest warrant, the State was aware that the defendant was then in Colorado under the preeminent supervision of the State of Colorado as the State expressly based its revocation petition on the defendant’s failure to timely report to her Colorado probation officer. A week later, the State became aware that the defendant was in the custody of the State of Colorado where she thereafter remained in continuous Colorado *331 custody or supervision until April 2013.
¶37 When the State wants to treat a Montana case as a serious matter, it does not put a Montana arrest warrant into the national or interstate criminal justice information databases and then declare the warrant to other jurisdictions as “Montana only.” This practice merely subjects the defendant and other jurisdictions to a costly, burdensome, and recurring catch-and-release exercise. Rather, it puts an unrestricted Montana warrant into the criminal justice information system and, upon notification of an arrest of a Montana fugitive in another jurisdiction, immediately places an interstate detainer on the fugitive forcing the other state to “hold” the defendant for extradition back to Montana upon the conclusion of proceedings in that state. The State did neither here. Why? Because it did not view the case as important enough to pay for the cost of transporting the defendant back to Montana.
¶38 Compounding matters for purposes of the West analysis, Koon, by formal Montana court filing while in Colorado custody in June 2009, affirmatively requested that Montana place an interstate detainer on her for the purpose of facilitating her extradition back to Montana to promptly resolve this matter upon conclusion of her Colorado incarceration. Despite awareness of the request, Montana prosecutorial and probation officials simply ignored Koon’s request and allowed the “Montana only” warrant to continue to pend without further action or attention. Three years later, while still on probation in Colorado, Koon called the Montana prosecutor’s office, expressed her desire to return to Montana, and requested information and assistance from Montana officials in getting Colorado and Montana to approve an interstate transfer that would allow Montana officials to supervise the balance of her Colorado probation in Montana in conjunction with her concurrent Montana probation, thereby allowing Koon to voluntarily return to Montana at no cost to the State to resolve this matter. In a classically ridiculous, bureaucratic Catch-22, which neither the State nor the Court make any attempt to defend, Colorado refused to approve an interstate transfer due to the pendency of the Montana warrant, a warrant that was neither important enough for Montana to extradite on or to quash to allow the defendant to return at her expense to resolve this matter. Why? Because the State did not have to and did not care enough about the case to do so. After fully discharging her Colorado probation, Koon returned to Montana, enrolled her children in high school in Great Falls, obtained gainful employment, and was working two jobs at the same time to make ends meet when she was stopped for a traffic offense and arrested and jailed on the almost five- *332 year-old Montana warrant.
¶39 As to the West prejudice factor, Koon made no showing that she suffered any prejudice to the evidentiary merits of her case as a result of the almost five-year delay. However, it is undisputed that the State arrested and jailed her on an almost five-year-old warrant issued not on any new criminal conduct but, rather, issued merely on a by then long-resolved failure to timely report to her Colorado probation officer. Given its manifest disregard for this case until Koon literally fell into the State’s net after almost five years, it is disingenuous at best for the State to now assert that it had any compelling law enforcement interest in this case sufficient to offset the inherently prejudicial nature of Koon’s arrest, incarceration, related loss of employment, and family disruption. While Koon is at least partially responsible for this prejudice due to her failure to surrender to authorities on her return to Montana, the primary focus of the West test is on the reasonableness and effect of the State’s efforts to arrest a probation violator. Even on balance with Koon’s failure to surrender herself after returning to Montana, the State’s utter disregard for this case significantly undercuts any assertion that its usually compelling interest in law enforcement justifies the inherent prejudicial nature of Koon’s arrest, incarceration, associated loss of employment, and family disruption in a case the State could not care less about. Under these extraordinary circumstances, the West prejudice factor weighs moderately against the State.
¶40 West next focuses on whether and to what extent, if any, the defendant impeded the State’s efforts to arrest her. Again, while Koon is certainly responsible for failing to surrender to authorities on returning to Montana, any assertion that she impeded the State’s nonexistent efforts to arrest her is ridiculous. The inconvenient fact is that the State made absolutely no effort to arrest Koon before she fortuitously fell into its hands on an unrelated traffic stop. Even liberally construed in the State’s favor, the West warrant-impedance factor at best balances evenly between the State and the defendant.
¶41 The only West factor that even remotely weighs in favor of the State is the reason for the delay. The State’s only justification for its utter disregard for Koon’s fundamental liberty interest, and concomitant due process right to be free from infringement thereof except pursuant to a fundamentally fair process of law, is the approximate $1,800 cost of extraditing her back to Montana from Colorado. Though a valid reason as far as it goes, it is highly doubtful that a single member of Montana’s judicial, prosecutorial, law enforcement, gubernatorial, or legislative communities would, if at all *333 candid, find an $1,800 savings to be a compelling justification for the arrest and jailing of any one of them or a family member under similar circumstances. While not particularly compelling under the totality of the circumstances, the West reason-for-delay factor must nonetheless still weigh moderately in favor of the State. Regardless of the fact that due process is flexible and that no single factor is dispositive, the West criteria clearly balance out against the State, thus necessitating a finding of unreasonable delay in arresting Koon under the totality of the circumstances.
¶42 The State does not challenge on appeal the continued validity of the West test. The Court’s opinion is conspicuously void of any particularized consideration and careful balancing of all of the West factors. The Court instead narrowly focuses on the District Court’s obviously correct—but not due-process-dispositive—conclusions of law that fugitives have no right to be extradited, the State has no duty to extradite fugitives, and that the defendant had no right to a concurrent dispositional sentence on her revocation even if promptly arrested. Merely noting that due process is flexible, recognizing that no single West factor is dispositive, and then focusing solely on considerations favorable to the State is hardly the type of careful balancing demanded by West and other balancing tests adopted by this Court. If we are of the view that our adoption of the West test was either improvident from the outset or has not proven out on experience, then we should straight up say so and discard it. If not, we should require the same particularized elemental consideration and careful balancing under the totality of the circumstances that West demands and then let the chips fall where they may regardless of whether we like the result in a particular case. I dissent.
JUSTICE RICE joins in the dissenting Opinion of JUSTICE SANDEFUR.