# IN THE SUPREME COURT OF IOWA

No. 20–0409

Submitted November 16, 2021—Filed January 28, 2022

**STATE OF IOWA,**

> Appellee,

vs.

**CHRISTOPHER LEE CUNGTION, JR.,**

> Appellant.

---

Appeal from the Iowa District Court for Tama County, Mitchell Turner (motion to dismiss) and Fae Hoover-Grinde (sentencing), Judges.

The defendant appeals the district court's jurisdiction to enter judgment involving conduct in Indian country. **AFFIRMED.**

Oxley, J., delivered the opinion of the court, in which Christensen, C.J., and Appel, Waterman, Mansfield, and McDonald, JJ., joined. McDermott, J., filed a special concurrence.

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender (argued), Assistant Appellate Defender, and Peter Stiefel (until withdrawal), Victor, for appellant.

Thomas J. Miller, Attorney General, and Aaron Rogers (argued), Assistant Attorney General, for appellee.

Sean R. Berry, Acting United States Attorney, Lisa C. Williams, Assistant United States Attorney, and Ann O'Connell Adams (argued), Attorney, U.S. Department of Justice, for amicus curiae United States.

Joshua A. Canterbury, Assistant Attorney General, and Christopher M. Nydle, Lead Prosecutor, for amicus curiae Sac & Fox Tribe of the Mississippi in Iowa.

**OXLEY, Justice.**

In 1948, Congress gave the State of Iowa criminal jurisdiction over offenses committed by or against "Indians"[1] on the Meskwaki Settlement near Tama. In 2018, Congress took that jurisdiction back. Because Congress's repeal of the state's jurisdiction did not affect criminal cases pending at the time of the repeal, we affirm the judgment against the defendant.

## I.

Christopher Lee Cungtion, Jr. got into an altercation with a group of people in the parking lot of the Meskwaki Bingo Casino and Hotel in the early morning hours of July 30, 2017. Cungtion hit one man in the face with a Hennessy whiskey bottle, threw the bottle at his car, and then drove a vehicle towards him. The man jumped out of the way when Cungtion swerved at him. Cungtion narrowly missed the man, sideswiping his car instead.

On November 30, 2018, the State charged Cungtion with intimidation with a dangerous weapon with intent to injure, willful injury resulting in bodily injury, assault with a dangerous weapon, and driving while barred. Cungtion entered an *Alford*[2] plea to the charges. He received deferred judgments on the intimidation with a dangerous weapon and willful injury resulting in bodily injury charges. He also received concurrent suspended two-year prison sentences with two-year terms of supervised probation for the other charges.

---

[1]As in *State v. Stanton*, we "use[] terms such as 'Indian country,' and demarcations such as 'Indian' and 'non-Indian' only for purposes of consistency with the existing legal framework and nomenclature." 933 N.W.2d 244, 247 n.1 (Iowa 2019).

[2]*See North Carolina v. Alford*, 400 U.S. 25 (1970).

In July 2019, Cungtion assaulted his girlfriend, quit his job, and smoked marijuana, all in violation of his probation. On July 22, the Tama County Attorney filed an application for entry of judgment on the counts for which Cungtion had previously received deferred judgments.

All of this seems fairly routine except for one critical fact—Cungtion is not an Indian, but his victim is, which means the State's ability to prosecute Cungtion under state law depends solely on congressional authorization. *State v. Stanton*, 933 N.W.2d 244, 249 (Iowa 2019) (explaining Congress granted Iowa criminal jurisdiction "over offenses committed by or against Indians" on the Meskwaki Settlement when it enacted the Act of June 30, 1948, ch. 759, 62 Stat. 1161 (1948 Act)). After the court granted Cungtion deferred judgments in November 2018 but before the county attorney sought entry of judgment on those counts in July 2019, Congress repealed the 1948 Act that had given Iowa criminal jurisdiction over the Meskwaki Settlement. The repeal was effective December 11, 2018. Act of Dec. 11, 2018, Pub. L. No. 115–301, 132 Stat. 4395 (Public Law 115–301); *see also Stanton*, 933 N.W.2d at 249.

Cungtion moved to dismiss the application for entry of judgment for lack of jurisdiction, arguing that Iowa had lost jurisdiction over the counts for which he received deferred judgments. Without jurisdiction, the court could not revoke his probation or enter judgment on the deferred counts. The district court denied Cungtion's motion, concluding that the State retained jurisdiction over acts committed before the repeal went into effect. The district court also rejected Cungtion's argument that the State lacked jurisdiction because he violated his

probation after the repeal, reasoning that Cungtion had committed the crimes for which he received the deferred judgments before December 11, 2018.

The district court revoked the deferred judgments and found Cungtion guilty on the willful injury resulting in bodily injury charge, imposed an indeterminate five-year prison term, which it suspended, and placed him on probation for five years. The court amended Cungtion's probation terms on the intimidation with a dangerous weapon charge. For the other charges, the court extended the probation terms to November 30, 2021.

Cungtion appealed, and we retained the appeal. The only issue is whether the district court had jurisdiction to enter judgment against Cungtion, which we review for errors at law. *See Stanton*, 933 N.W.2d at 247.

## II.

This case marks the second time in two years we have confronted the effects of Congress's 2018 repeal of the 1948 Act. In *State v. Stanton*, we held that Public Law 115–301's repeal had no effect on the state's jurisdiction to prosecute crimes on the Meskwaki Settlement involving non-Indians. 933 N.W.2d at 249–50. That's because the state's criminal jurisdiction over non-Indians existed before the 1948 Act, so its repeal left that jurisdiction untouched. *Id.* But with the repeal of the 1948 Act, the state no longer has jurisdiction over criminal acts committed by or against Indians on the Meskwaki Settlement. What about acts committed before the repeal? May the State finish prosecuting charges that were pending on December 11, 2018? Because Congress did not provide otherwise, we conclude it can.

A.

This appeal involves the State's ability to impose its criminal laws in Indian country, so we must consider the statutory repeal against the backdrop of Indian law. *See McClanahan v. State Tax Comm'n of Ariz.,* 411 U.S. 164, 172 (1973); *Sac & Fox Tribe of the Miss. in Iowa v. Licklider,* 576 F.2d 145, 147 (8th Cir. 1978) ("Federal Indian law is a subject that cannot be understood if the historical dimension of existing law is ignored." (quoting *United States ex rel. Condon v. Erickson,* 478 F.2d 684, 686 (8th Cir. 1973))). Indian tribes are semi-independent sovereigns with inherent authority over their people and their land. Congress has broad power, derived from the Constitution, to legislate with respect to Indian tribes, authority "consistently described as 'plenary and exclusive.'" *United States v. Lara,* 541 U.S. 193, 200 (2004). A state has no authority to enforce its criminal laws over conduct involving Indians in Indian country unless Congress provides it. A state's criminal jurisdiction is wholly dependent on, and strictly limited by, the statutory grant of such authority from Congress. *See Tyndall v. Gunter,* 840 F.2d 617, 619 (8th Cir. 1988) (citing *Washington v. Confederated Bands & Tribes of the Yakima Indian Nation,* 439 U.S. 463, 470–71 (1979)) ("[I]t is settled that the federal government may grant to the states the authority to regulate matters involving Indians, including criminal offenses."). It is also important to recognize that Congress authorized state criminal jurisdiction involving different tribes in different states at different times. *See* Robert T. Anderson, *Negotiating Jurisdiction: Retroceding State Authority over Indian Country Granted by Public Law 280,* 87 Wash. L. Rev. 915, 928–29 (2012)

[hereinafter Anderson] ("Congress has used its power under the Indian Commerce Clause to authorize the exercise of state jurisdiction in haphazard fashion."). We must therefore carefully consider congressional action as it applies to the specific state and tribe at issue.

As we explained in *Stanton,* Congress conferred criminal jurisdiction on the State of Iowa when it passed the 1948 Act. 933 N.W.2d at 249. The state's jurisdiction was concurrent with federal jurisdiction over conduct covered by the Indian Major Crimes Act, *see Negonsott v. Samuels,* 507 U.S. 99, 105 (1993) (holding the Kansas Act, which granted similar authority to Kansas as given to Iowa under the 1948 Act, "confer[red] only concurrent 'legislative' jurisdiction on the State to define and prosecute similar offenses"), and also concurrent with the Tribe's retained inherent authority, *see* 25 U.S.C. § 1301(2) (recognizing and affirming the inherent power of Indian tribes to exercise criminal jurisdiction over all Indians); *see also Lara,* 541 U.S. at 210. The 1948 Act was specific to Iowa's jurisdiction within the Meskwaki Settlement, similar to other legislation granting jurisdiction to specific states concerning specific tribes. *See, e.g.,* Vanessa J. Jimenez & Soo C. Song, *Concurrent Tribal and State Jurisdiction Under Public Law 280,* 47 Am. U. L. Rev. 1627, 1656 n.163 (1998) (detailing separate congressional grants of criminal jurisdiction to Kansas and New York over crimes committed on all Indian reservations within their states and to North Dakota over offenses committed by or against Indians on the Devils Lake Indian Reservation).

In 1953, Congress passed 18 U.S.C. § 1162, commonly referred to as Public Law 280, addressing jurisdiction over Indian country in several states. Public Law 280 required six states, and gave others the option, to unilaterally exercise criminal jurisdiction over tribes in their respective states. *See* Act of Aug. 15, 1953, ch. 505, § 2, 67 Stat. 588 (codified at 18 U.S.C. § 1162). These laws were enacted during the "termination era" as part of Congress's efforts to remove federal oversight and assimilate Indians into their state communities in the 1940s and 1950s. *See* Anderson, 87 Wash. L. Rev. at 930 ("In 1953 Congress . . . set a goal of removing federal jurisdiction over Indian country and making Indians subject to general state law as quickly as possible."). Congress soon concluded that forced assimilation was ineffective, revising Public Law 280 in 1968 to authorize state criminal jurisdiction only with the consent of the affected tribes and to provide a mechanism for states to retrocede criminal jurisdiction to the United States. *Id.* at 945–50. These Congressional amendments applied to Public Law 280 states but not to the handful of states like Iowa whose jurisdiction was conferred by separate legislation before the 1953 enactment. *See State v. Lasley,* 705 N.W.2d 481, 489 (Iowa 2005) ("Iowa's jurisdiction over criminal offenses committed by or against Indians on the Tribe's reservation derives from [the 1948 Act] rather than Public Law 280.").

State criminal jurisdiction over Indians in Indian country has been criticized by many as improper interference in the powers of sovereign tribal nations. *See* Kevin K. Washburn, *Federal Criminal Law and Tribal Self-Determination,* 84 N.C. L. Rev. 779, 814, 819–20 (2006) (describing the history

of the federal government's relationship with Indian tribes and the return in the 1980s to a federal philosophy favoring self-governance).

> Indeed, during the last [now fifty] years, Congress, the courts, and the executive branch have established a new federal Indian policy in favor of the preservation and reinvigoration of tribal governments. The federal government now respectfully recognizes Indian nations as sovereigns and celebrates its "government-to-government" relationship with tribes. Rather than seeking to destroy tribal governments, expand federal power over tribes, or assimilate individual Indians, the United States now officially encourages "tribal self-determination" and "tribal self-governance."

*Id.* at 783–84 (footnotes omitted).

One way tribes have reclaimed their sovereignty is by expanding their local law enforcement and court systems. In 2002, the Sac & Fox Tribe of the Mississippi in Iowa adopted a comprehensive Tribal Code governing a wide variety of conduct within the tribe, including criminal conduct. *See* Sac & Fox Tr. of Miss. Code (2002), https://www.meskwaki.org/constitution. In 2004, "[t]he Tribal Court of the Sac and Fox Tribe was established by the Tribal Council." *Att'y's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of the Miss. in Iowa*, 609 F.3d 927, 933 & n.4 (8th Cir. 2010). The Tribe now has its own police force, prosecutors, a trial court, and an appellate court. Press Release, Sac & Fox Tribe of the Miss. in Iowa, *Sac & Fox Tribe of the Mississippi in Iowa Welcomes Senate Passage of Proposed Bill,* (Nov. 28, 2018), https://www.meskwaki.org/press-release-sac-fox-tribe-of-the-mississippi-in-iowa-welcomes-senate-passage-of-proposed-bill/[https://perma.cc/93RX-ZUVV].

Consistent with the modern view toward removing state criminal jurisdiction over Indians in Indian country, in 2016 the Iowa General Assembly enacted Iowa Code section 1.15A, tendering to the federal government "any and all criminal jurisdiction" Iowa had over crimes committed "by or against Indians on the Sac and Fox Indian settlement in Tama, Iowa." 2016 Iowa Acts ch. 1050, § 1 (codified at Iowa Code § 1.15A (2017)). The statute provided that Iowa's criminal jurisdiction would cease "as soon as" the federal government assumed and accepted the tender of jurisdiction. *Id.* This enactment reflected a joint effort by the Tribe and the state to allow the Tribe to exercise criminal jurisdiction over its people and its land without being subject to duplicative enforcement from the state. In 2018, Congress passed Public Law 115–301 repealing Iowa's criminal jurisdiction over the Meskwaki Settlement.

### B.

With this background, we turn to the issue before us—whether the State can continue to prosecute criminal conduct that occurred prior to the effective date of Public Law 115–301. The parties assert that state law controls the outcome, characterizing Iowa Code section 1.15A (2017) as a retrocession of the state's jurisdiction, relying on *Tyndall v. Gunter*. *See* 840 F.2d at 618 ("[T]he substance of what Nebraska retroceded, or more specifically, what Nebraska did with the criminal cases pending in its courts, is a question of state law."). That was true for Nebraska because of the scheme Congress put in place. For Nebraska and other Public Law 280 states, Congress expressly created a mechanism for states to retrocede, or return, criminal jurisdiction over Indian

country to the federal government. *See* 25 U.S.C. § 1323(a) ("The United States is authorized to accept a retrocession by any State of all or any measure of the criminal or civil jurisdiction, or both, acquired by such State . . . ."). Nebraska did just that on April 16, 1969, when it enacted legislation retroceding its criminal jurisdiction pursuant to section 1323(a). *See Tyndall*, 840 F.2d at 618. As the Tribe points out in its amicus brief, Congress expressly limited the retrocession process to states that acquired their jurisdiction pursuant to Public Law 280. 25 U.S.C. § 1323(a) (limiting retrocession to states that had received jurisdiction "pursuant to the provisions of section 1162 of Title 18, section 1360 of Title 28, or section 7 of the Act of August 15, 1953 (67 Stat. 588), as it was in effect prior to its repeal by subsection (b) of this section"). *Tyndall*'s focus on whether Nebraska intended to retain jurisdiction over pending cases when it passed legislation to accomplish retrocession is consistent with the statutory scheme Congress set up in section 1323, which gives the state the ability to retrocede all or only part of the jurisdiction it had acquired. *See* 840 F.2d at 618 (recognizing that the validity of Nebraska's retrocession was a matter of federal law but the substance of what Nebraska retroceded was a matter of state law).

But Iowa is not a Public Law 280 state, and Congress has created no statutory mechanism for Iowa to retrocede its criminal jurisdiction on the Meskwaki Settlement to the federal government. Absent a congressionally-sanctioned retrocession mechanism, Iowa Code section 1.15A is nothing more than a statement of the state's desire to relinquish its criminal jurisdiction.

Two years after the Iowa General Assembly passed section 1.15A, Congress repealed the 1948 Act through Public Law 115–301. Having removed that congressional authorization, Iowa lacks the ability to exercise criminal jurisdiction within the Meskwaki Settlement. *See McGirt v. Oklahoma,* 140 S. Ct. 2452, 2467–68, 2478–79 (2020) (holding Oklahoma lacked criminal jurisdiction over Indian's conduct on Creek reservation where the reservation was never terminated or disestablished despite Oklahoma's long history of prosecuting crimes on the land identified as the Creek reservation). Cungtion argues that all state criminal jurisdiction Iowa held over the Meskwaki Settlement ended on December 11, 2018, when Public Law 115–301 went into effect and Iowa lost the ability to exercise its jurisdiction even over pending cases. But the repeal of the 1948 Act was done by legislative action, so whether that is true depends on what that legislation provides. We apply ordinary rules of statutory construction to determine whether Public Law 115–301 extinguished the State's jurisdiction over prerepeal conduct. *Cf. State v. Macke,* 933 N.W.2d 226, 234 (Iowa 2019) (citing *Hamdan v. Rumsfeld,* 548 U.S. 557, 577 (2006), as recognizing that normal rules of statutory construction may dictate that a statute was not intended to apply retroactively).

Our inquiry begins with the text of Public Law 115–301. *See Lamie v. U.S. Tr.,* 540 U.S. 526, 534 (2004). The legislation provides:

> Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Act of June 30, 1948, entitled "An Act to confer jurisdiction on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation" (62 Stat. 1161, chapter 759) is repealed.

Public Law 115–301 (emphasis omitted). To fully understand the effect of Public Law 115–301, we should also review the repealed 1948 Act, which states in its entirety:

> Be it enacted by the Senate and House of Representatives of the United States of America in Congress assemble, That jurisdiction is hereby conferred on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation in that State to the same extent as its courts have jurisdiction generally over offenses committed within said State outside of any Indian reservation: Provided, however, That nothing herein contained shall deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations.

1948 Act (emphasis omitted). Public Law 115–301 did not address its effect on acts committed prior to its effective date, and the 1948 Act did not contemplate what would happen if it was ever repealed. The statutory text does not answer our question.

Because we are construing federal legislation we must also consider whether the federal savings statute, 1 U.S.C. § 109, applies to the statutory repeal, *see Dorsey v. United States*, 567 U.S. 260, 273–75 (2012) (explaining that the federal savings statute sets forth an "important background principle of interpretation"); *Great N. Ry. v. United States*, 208 U.S. 452, 465 (1908) (explaining that under the general principles of construction requiring that effect be given to all the parts of a law, if possible, the predecessor general savings provision should be read as part of a statutory repeal "unless, either by express declaration or necessary implication, arising from the terms of the law as a whole," it is clear Congress did not intend it to apply). The general savings statute provides:

The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. "Congress enacted [section 109] to abolish the common-law presumption that the repeal of a criminal statute resulted in the abatement of 'all prosecutions which had not reached final disposition in the highest court authorized to review them.'" *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660 (1974) (quoting *Bradley v. United States*, 410 U.S. 605, 607 (1973)). If the savings provision applies, the repeal left in place the State's jurisdiction over pending cases. If it does not, the State lost jurisdiction. *Id.*

Whether section 109 saves the State's jurisdiction over Cungtion's deferred judgments turns on two questions. First, does the 1948 Act impose a penalty or liability that section 109 requires to be treated as remaining in force? If it does, did Congress either expressly or by necessary implication provide that the penalty or liability so imposed is nonetheless released or extinguished?

By its plain language, section 109 treats certain repealed statutes as remaining in effect for pending cases so that the repeal does not "release or extinguish any penalty, forfeiture, or liability *incurred under such statute.*" 1 U.S.C. § 109 (emphasis added). The savings clause requires "such statute" to be treated as remaining in force to sustain "any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." *Id.*; *see United States v. McNair*, 180 F.2d 273, 274 (9th Cir. 1950) ("[S]ection [109] . . . extends . . . to 'liabilities,' and a liability or obligation to pay a tax *imposed under a repealed*

*statute* is not only within the letter, but the spirit and purpose of the provision." (emphasis added) (quoting *Hertz v. Woodman*, 218 U.S. 205, 217 (1910))). In other words, section 109 identifies the penalty to be preserved as the penalty incurred under the statute being repealed. *See id.* ("[W]e must take that general saving clause into consideration as a part of the legislation involved in the determination of whether *a 'liability' had been incurred* by the imposition of a tax prior to the act that destroyed *the law under which it had been imposed.*" (emphasis added)).

Cungtion urges a narrow reading of the general savings provision, arguing it does not apply here because the 1948 Act does not itself impose any specific penalty or liability. In the words of section 109, no penalty or liability is "incurred under" the 1948 Act. Instead, it "conferred [criminal jurisdiction] on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation." 1948 Act. Rather than directly defining a specific liability or penalty, the 1948 Act makes an individual like Cungtion, who commits an act in Indian country against an Indian, subject to all of the state's criminal laws. In that sense, Cungtion only indirectly incurred liability "under" the 1948 Act when he intimidated an Indian in Indian country with a dangerous weapon in violation of Iowa Code section 708.6. Cungtion argues a narrow application is appropriate when we consider "that the states are severely limited in exercising jurisdiction over Indians within Indian country absent authorization by Congress." *Walker v. Rushing*, 898 F.2d 672, 673 n.3 (8th Cir. 1990). Further, the federal government maintained concurrent jurisdiction over the Meskwaki Settlement, so no lawless

gap is created by applying the repeal retroactively. *Cf. State v. Goham*, 216 N.W.2d 869, 871 (Neb. 1974) (relying in part on the exclusivity of state jurisdiction over Indian country to conclude Nebraska's retrocession of criminal jurisdiction over Indian country did not apply to pending actions, reasoning "that the [Nebraska] Legislature did not intent to leave Indian country located in Thurston County, Nebraska, as a lawless domain"). We consider how federal courts have applied the federal savings provision in determining whether it should apply here.

Most cases applying section 109 involve the amendment or repeal of statutes imposing a specific liability or a specific criminal penalty. *See, e.g., Dorsey*, 567 U.S. at 272–73 (considering the general savings provision in determining whether the Fair Sentencing Act of 2010, Pub. L. No. 111–220, 124 Stat. 2372, which reduced the crack-to-powder cocaine disparity from 100–to–1 to 18–to–1, applied to sentences imposed for conduct that predated the Act); *United States v. Klump*, 536 F.3d 113, 120 (2d Cir. 2008) (applying section 109 in holding that defendant was properly sentenced to ten-year mandatory minimum under former version of 18 U.S.C. § 924(c) in effect at time of defendant's conduct); *United States v. Brown*, 429 F.2d 566, 567 (5th Cir. 1970) (applying section 109 in upholding conviction for violation of 15 U.S.C. § 902(e), which was repealed between the commission of the offense and defendant's conviction). If this was all the authority we had, we might conclude that federal courts do in fact apply the savings provision narrowly.

That section 109 has been applied to the repeal of statutes that directly impose a specific penalty does not in itself mean it cannot be applied to the repeal of statutes that indirectly do so. Other contexts in which the savings provision has been applied reveal a broader application. For example, even though it is phrased in terms of "[t]he repeal of any statute," 1 U.S.C. § 109, the United States Supreme Court reads "repeal" broadly to include the enactment of new penalties that merely diminish prior penalties. *See Dorsey*, 567 U.S. at 272 ("Case law makes clear that the word 'repeal' applies when a new statute simply diminishes the penalties that the older statute set forth."). If the Supreme Court intended a narrow application of the savings provision, it likely would have limited it to penalties that were eliminated, not those that were merely diminished.

The savings provision has also been applied to the amendment of a statute that did not itself impose a penalty but "play[ed] a significant role in the statutory framework that" did. *United States v. Jacobs*, 919 F.2d 10, 12 (3d Cir. 1990). *United States v. Jacobs* involved an amendment to 18 U.S.C. § 3559, which changed certain crimes from a Class B felony to a Class C felony. 919 F.2d at 12. In turn, 18 U.S.C. § 3561 provides that a defendant convicted of a Class C felony is eligible for probation, but one convicted of a Class B felony is not. *Jacobs*, 919 F.2d at 11. Jacobs was convicted of a drug crime when the offense was considered a Class B felony. *Id.* But she was not sentenced until after the amendment to section 3559, and she argued she was eligible for probation because the offense was a Class C felony at the time sentence and judgment were entered. *Id.* The United States Court of Appeals for the Third Circuit applied the

savings provision and imposed the penalty—no eligibility for probation—in effect when Jacobs committed her criminal act prior to the amendment. *Id.* at 13. The court "decline[d] to attach any significance to the fact that section 3559 affects punishment indirectly through its application. The plain language of the saving statute indicates that it prevents statutory amendments from affecting penalties retroactively, even if they do so indirectly." *Id.* at 12. This too counsels toward a broader application of section 109.

Cungtion also attempts to avoid the savings clause by pointing out that it does not apply to jurisdiction-stripping statutes. *See Hamdan*, 548 U.S. at 576–77. A "jurisdiction-conferring or jurisdiction-stripping statute usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' " *Id.* at 577 (quoting *Hallowell v. Commons*, 239 U.S. 506, 508 (1916)). "If that is truly all the statute does, no retroactivity problem arises because the change in the law does not 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' " *Id.* (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)). Section 109's saving provision does not apply to jurisdiction-stripping legislation because jurisdiction affects procedural, not substantive, rights. *See Bruner v. United States*, 343 U.S. 112, 117 & n.9 (1952) (holding repeal of court's jurisdiction to consider claim for overtime by federal employee "is not affected by the so-called general savings statute").

Cungtion's argument conflates a court's jurisdiction to hear a case with a state's criminal jurisdiction to enforce its substantive laws. When Congress

changes the tribunal, or forum, to decide cases without affecting substantive rights, there is no liability or penalty to be saved by section 109. But when Congress repeals the ability to impose substantive laws, section 109 applies to save both the substantive liability and the forum for adjudicating it. *De La Rama S.S. Co. v. United States*, is instructive on this point. 344 U.S. 386 (1953). *De La Rama* involved a suit in admiralty brought against the United States under the War Risk Insurance Act of 1940, ch. 447, § 221, 54 Stat. 689, to recover for the loss of a ship sunk by enemy action during World War II. *De La Rama*, 344 U.S. at 386–87. After the war was over and while the suit was pending, Congress repealed the War Risk Insurance Act, which had imposed liability on the United States and provided jurisdiction for district courts to adjudicate claims under the Act. *Id.* at 387–88. In rejecting the government's position that the district court lost jurisdiction when the Act was repealed, the Supreme Court reinforced the difference between the repeal of substantive rights and the repeal of jurisdiction. *Id.* at 389–91.

> The Government rightly points to the difference between the repeal of statutes solely jurisdictional in their scope and the repeal of statutes which create rights and also prescribe how the rights are to be vindicated. In the latter statutes, "substantive" and "procedural" are not disparate categories; they are fused components of the expression of a policy.

*Id.* at 390. Thus, where the same act both created the liability and the jurisdiction, section 109 saved the liability, and the mode for enforcing it, after the Act's repeal. *Id.* at 389–91.

"Substantive law creates, defines, and regulates rights, while procedural law governs the practice, method, procedure, or legal machinery by which the

substantive law is enforced or made effective." *Bd. of Trs. of the Mun. Fire & Police Ret. Sys. v. City of W. Des Moines*, 587 N.W.2d 227, 231 (Iowa 1998) (citing *First Nat'l Bank in Lenox v. Heimke*, 407 N.W.2d 344, 346 (Iowa 1987)). Here, the 1948 Act did much more than decide which court would hear a criminal case. It conferred on the State of Iowa criminal jurisdiction to impose its laws on individuals who were not previously subject to those laws. In that way, it created substantive liability where none existed. *See, e.g., Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 950–51 (1997) (amendment to jurisdictional provisions of the False Claims Act, 31 U.S.C. § 3730(b), expanding qui tam actions created jurisdiction in the form of substantive rights where none existed, not just power of particular court). When Congress decided such conduct should no longer be a state-law crime and repealed the 1948 Act, Iowa lost the ability to enforce its criminal statutes in cases involving Indians on the Meskwaki Settlement. Public Law 115–301 does not just change the tribunal that can hear the case as contemplated in jurisdiction-stripping cases. It eliminates the liability and penalties imposed by all Iowa criminal laws for conduct involving Indians on the Meskwaki Settlement—liability that had existed for the last seventy years. The Supreme Court's jurisdiction-stripping jurisprudence does not prevent application of the federal savings provision.

Considering the breadth in which section 109 has been applied and the substantive rights created by the 1948 Act, we conclude the federal savings provision applies to Public Law 115–301's repeal of the 1948 Act. We do so mindful of the Tribe's sovereignty over its people and its land. Allowing State

jurisdiction to continue over prerepeal conduct does no harm to the Tribe's self-governance. Indeed, in its amicus brief, the Tribe supports the State's continuing jurisdiction.

The next question is whether Congress nonetheless provided that its repeal of the 1948 Act extinguished the State's ability to continue existing prosecutions. Public Law 115–301 is silent on this point, but that is not the end of the inquiry. Although a repeal does not extinguish prior penalties unless the "repealing Act shall so expressly provide," 1 U.S.C. § 109, "the Court has long recognized that this saving statute creates what is in effect a less demanding interpretive requirement," *Dorsey*, 567 U.S. at 273–74 (recognizing that the federal "saving statute permits Congress to apply a new Act's more lenient penalties to pre-Act offenders without expressly saying so in the new Act"). The Supreme Court looks beyond the words of the repealing statute, *see id.* at 273–80 (considering six different factors in concluding Congress intended to apply new mandatory minimum sentences retroactively), including the purpose and legislative history of the repeal, *see id.* at 276–78 (considering, *inter alia*, that the purpose of reducing sentencing disparities would be thwarted if the legislation was not applied retroactively); *Marrero*, 417 U.S. at 661–62 ("Although the general saving clause does not ordinarily preserve discarded remedies or procedures . . . the legislative history of [section] 7237(d) reveals that Congress meant ineligibility for parole to be treated as part of the 'punishment' for the narcotics offenses for which respondent was convicted." (citations omitted)); *Great N. Ry.*, 208 U.S. at 465 (explaining that when interpreting a statute, the statute's provisions cannot

justify a disregard of the will of Congress as manifested, either expressly or by necessary implication).

Even considering Public Law 115–301's legislative history and purpose, we find nothing that reveals Congress intended its repeal of the state's jurisdiction to apply to pending cases. Part of the reason Congress repealed the 1948 Act was to assist Indians on the Meskwaki Settlement with self-governance by giving federal dollars to support tribal courts, law enforcement, and a detention center. H.R. Rep. 115–279, at 2 (2017). The Bureau of Indian Affairs was not authorized to release funds until the state's jurisdiction over crimes by or against Indians ended. *Id.* But this goal of providing additional funding does not imply the repeal would apply retroactively. In other words, a retroactive application of the repeal of criminal jurisdiction is not necessary to further this goal.

The parties also argue we must consider the role the state played, given Congress's reference to Iowa Code section 1.15A in the floor debate discussing whether to repeal the 1948 Act. *See* 163 Cong. Rec. H8323–02 (2017). But Congress's recognition that "the State of Iowa has agreed that its Federal grant of criminal jurisdiction can be repealed," *id.* (statement of Rep. Cook), does not imply that Congress intended to abate the state's jurisdiction over prerepeal conduct on the Meskwaki Settlement. That the state was ready to give up its jurisdiction on the Meskwaki Settlement "as soon as" the federal government accepted its tender says nothing about whether Congress intended its repeal of the state's jurisdiction to apply to pending prosecutions. Discussion of the Iowa statute was merely a recognition that the state agreed it was ready to relinquish,

and the Tribe ready to accept, responsibility for prosecuting crimes on the Meskwaki Settlement. Allowing state jurisdiction to continue over pending criminal cases is not inconsistent with recognizing that the state and Tribe agreed it was time.

Nothing in the language or enactment of Public Law 115–301 reveals that Congress provided, expressly or by necessary implication, that the repeal of the 1948 Act would abate pending state prosecutions. We therefore conclude that section 109 saves the State's jurisdiction over crimes committed before Public Law 115–301 went into effect.

C.

Finally, the fact that Cungtion received a deferred judgment in November 2018 and the State sought to revoke the deferral based on Cungtion's conduct in July 2019 does not change the outcome. The court may defer judgment and place the defendant on probation under certain conditions. *See* Iowa Code § 907.3(1)(*a*). If the defendant does not cooperate with the probationary terms, "the court may withdraw the defendant from the program, pronounce judgment, and impose any sentence authorized by law." *Id.* § 907.3(1)(*b*); *see State v. Thomas*, 659 N.W.2d 217, 221 (Iowa 2003) ("If probation fails, the judgment is entered and the court is permitted to impose any authorized sentence."). Critically, the district court retains jurisdiction over the defendant's case during the period of his probation. *See Barker v. State*, 479 N.W.2d 275, 278 (Iowa 1991). The judgment entered and the sentence imposed are based on the original conduct giving rise to the deferred judgment, not the events triggering the

probation violation. Because Cungtion committed his crimes on the Meskwaki Settlement before December 11, 2018, the 2018 repeal of the 1948 Act did not preclude the district court from entering judgment in 2020 after he violated the terms of his probation.

### III.

The State maintained jurisdiction over Cungtion's case, and the district court had jurisdiction to enter judgment on the deferred counts.

**AFFIRMED.**

Christensen, C.J., and Appel, Waterman, Mansfield, and McDonald, JJ., join this opinion. McDermott, J., files an opinion concurring specially.

**McDERMOTT, Justice (concurring specially).**

I join today's opinion except for the part relying on legislative history. The majority correctly concludes that the general savings statute, 1 U.S.C. § 109, applies to Congress's repeal of the 1948 Act (officially, the "Act of June 30, 1948, ch. 759, 62 Stat. 1161") granting criminal jurisdiction to Iowa over offenses by or against members of the Sac & Fox Tribe within the state. The majority, however, delves into "legislative history and purpose" to determine whether Congress's repeal applies to pending prosecutions. I would not rely on legislative history to answer this question.

The majority cites a statement made by one representative in a floor debate to support what "Congress intended" when it enacted Public Law 115–301. Yet a statute's meaning "is to be found not in the subjective, multiple mind of Congress but in the understanding of the objectively reasonable person." Frank H. Easterbrook, *The Role of Original Intent in Statutory Construction*, 11 Harv. J.L. & Pub. Pol'y 59, 65 (1988). When construing statutes, our task is to look for the meaning of the text rather than the mystical "intent" of the legislature. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 375 (2012). For this reason, "[w]e do not inquire what the legislature meant; we ask only what the statute means." *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 396–97 (1951) (Jackson, J., concurring) (quoting Oliver Wendell Holmes, *The Theory of Legal Interpretation*, *in Collected Legal Papers* 203, 207 (1920)).

The text of the general savings statute states that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute." 1 U.S.C. § 109. In my view, the text of the statute permits pending state prosecutions to continue because the "penalty" and "liability" incurred under the Iowa Code was incurred prior to the 1948 Act's repeal. The defendant's pending prosecution thus is not "released" by the later 1948 Act repeal. Apart from the majority's discussion of legislative history, I concur in the majority's sound reasoning and fully join the opinion.